**Martin DAVEY and Source New Zealand, Ltd., Appellants,**

v.

**Jasen SHAW, Appellee.**

No. 05–06–00874–CV.

Court of Appeals of Texas, Dallas.

May 24, 2007.

follows: Jack Ellison [10/34 × 2/5]; Bailey [2/34 × 2/5]; and Appellants [22/34 × 2/5].

Craig P. Henderson, William L. Wolf, P.C., Dallas, for Appellants.

Joshua Iacuone, Figari & Davenport, L.L.P., Dallas, for Appellee.

Before Justices WHITTINGTON, FRANCIS, and LANG.

## OPINION

Opinion by Justice LANG.

In this accelerated, interlocutory appeal, appellants Martin Davey ("Davey") and Source New Zealand, Ltd. ("SNZ") challenge the trial court's order denying their special appearances in a suit brought by appellee Jasen Shaw ("Shaw") for unpaid commissions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (Vernon Supp. 2006). In six issues, Davey and SNZ contend the trial court erred in concluding personal jurisdiction exists over them. We agree. For the reasons set forth below, we reverse the trial court's order and ren-

der judgment granting the special appearances of Davey and SNZ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

SNZ is an animal importer/exporter incorporated in New Zealand and wholly owned by Davey, a citizen of New Zealand, its sole shareholder and sole officer. SNZ's principal place of business is in New Zealand. Shaw, a New Zealand citizen currently a legal resident alien in the United States, was employed by SNZ beginning in 1993. At that time, Shaw's compensation included a 5% commission on SNZ sales.

In 1997, Shaw moved to the United States and became employed by Animal Source Texas, Inc. ("AST"), a Texas corporation wholly owned by SNZ. Davey is SNZ's sole officer. Shaw resigned from AST on February 24, 2003. Following Shaw's resignation, Davey traveled to Texas to manage AST.

On April 13, 2005, Shaw filed suit against Davey and SNZ for unpaid commissions, an accounting, and damages caused by allegedly fraudulent and negligent representations by Davey and SNZ. In response, Davey and SNZ filed special appearances, asserting that they are not subject to jurisdiction in Texas and that Davey is protected by the "fiduciary shield" doctrine.

In his "Opposition to the Special Appearance of Defendants," Shaw contended: (1) Davey and SNZ purposely availed themselves of jurisdiction in Texas by establishing minimum contacts with Texas; (2) SNZ is a "single business enterprise" with AST, a Texas corporation; (3) the "fiduciary shield" doctrine is not applicable, as Davey is the "alter ego" of SNZ and AST; (4) it would not offend traditional notions of fair play and substantial justice for Davey and SNZ to defend themselves in Texas, and (5) Davey and SNZ would not be unduly burdened by litigation in Texas because Davey currently resides in Texas and, according to Davey, SNZ is now defunct.

The parties submitted documents, affidavits, and deposition excerpts in support of their jurisdictional claims. After hearing oral argument, the court signed an order on June 7, 2006, denying the special appearances of both Davey and SNZ and finding them subject to the court's jurisdiction "in all respects." Davey and SNZ made timely requests to the trial court for findings of fact and conclusions of law. On September 22, 2006, untimely findings of fact and conclusions of law were entered by the trial court.

The trial court concluded Davey's systematic and continuous contacts in Texas support general jurisdiction over Davey. In addition, the trial court determined "personal jurisdiction" over SNZ is proper based on "the alter ego theory of disregarding the corporate fiction." The trial court did not specify whether the "personal jurisdiction" it found as to SNZ was specific or general jurisdiction. Finally, the trial court concluded the exercise of personal jurisdiction over Davey and SNZ comports with traditional notions of fair play and substantial justice.

## II. DENIAL OF APPELLANTS' SPECIAL APPEARANCES

In six specific issues, Davey and SNZ contend: (1) the trial court erred in denying the special appearance of SNZ; (2) the trial court erred in denying the special appearance of Davey; (3) the trial court's denial of their special appearances is against the great weight and preponderance of the evidence; (4) the evidence is factually insufficient to support the trial court's denial of their special appearances;

(5) the evidence is legally insufficient to support the trial court's denial of their special appearances; and (6) the trial court erred in concluding personal jurisdiction exists over them.

Shaw argues the trial court properly denied the special appearances of Davey and SNZ because both appellants purposefully availed themselves to the benefits and protections of this forum and minimum contacts with Texas have been established.[1] Shaw contends SNZ is a "single business enterprise" with AST, a Texas corporation. In addition, Shaw asserts the "fiduciary shield doctrine" is not applicable, as Davey is the "alter ego" of SNZ and AST. Finally, Shaw argues traditional notions of fair play and substantial justice would not be offended by having Davey and SNZ defend themselves in Texas, nor would Davey and SNZ be unduly burdened by defending themselves in this Texas litigation.

## A. Standard of Review

■ Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex.2002). However, the trial court must frequently resolve fact questions before deciding the jurisdictional question. *Id.* The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex.2007). A defendant must then negate all bases for personal jurisdiction alleged by the plaintiff. *Id.*

■ If the trial court issues findings of fact and conclusions of law in ruling on the special appearance, the appellant may challenge the legal and factual sufficiency of the evidence to support the findings and appellate courts may review the legal and factual sufficiency of the evidence to support the findings. *See BMC Software,* 83 S.W.3d at 794. A legal sufficiency challenge to the findings of fact will not be sustained if there is more than a scintilla of evidence to support the findings. *Id.* at 795. In conducting a factual sufficiency review, appellate courts may set aside a trial court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *See Hoffmann v. Dandurand,* 180 S.W.3d 340, 345 (Tex.App.-Dallas 2005, no pet.).

■ When a trial court's findings of fact are unchallenged on appeal, they occupy the same position and are entitled to the same weight as the verdict of a jury. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986). *See also Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 632 (Tex.App.-Dallas 1993, writ denied). "They are binding on an appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding." *McGalliard,* 722 S.W.2d at 696. *See also El Puerto De Liverpool, S.A. De C.V. v. Servi Mundo Llantero S.A. De C.V.,* 82 S.W.3d 622, 630 (Tex.App.-Corpus Christi 2002, pet. dism'd w.o.j.); *Nikolai v. Strate,* 922 S.W.2d 229, 236 (Tex.App.-Fort Worth 1996, writ denied).

We review the trial court's legal conclusions de novo. *BMC Software,* 83 S.W.3d at 794. Specifically, we review the trial court's legal conclusions drawn from the facts to determine their correctness. *Id.*

1. Shaw does not identify the purported personal jurisdiction over appellants as general or specific.

If the appellate court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law will not require reversal. *Id.*

## B. Applicable Law

### 1. Texas Long-arm Statute

The Texas long-arm statute authorizes the exercise of Texas jurisdiction over nonresident defendants. *See generally* TEX. CIV. PRAC. & REM.CODE ANN. §§ 17.041–.045 (Vernon 1997 & Supp.2006). The long-arm statute permits Texas courts to exercise jurisdiction over nonresident defendants that do business in Texas. *See BMC Software,* 83 S.W.3d at 795. The statute sets out a list of activities that constitute doing business in Texas. *Id.; see also* TEX. CIV. PRAC. & REM.CODE ANN. § 17.042. Section 17.042 provides that, among other acts, a nonresident defendant does business in Texas if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM.CODE ANN. § 17.042(1)-(3).

The list in § 17.042 is not exhaustive. *BMC Software,* 83 S.W.3d at 795. The Texas Supreme Court has held that the broad language of § 17.042 "extends Texas courts' personal jurisdiction 'as far as the federal constitutional requirements of due process will permit.'" *Id.* (quoting *U–Anchor Adver., Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977)).

### 2. Due Process

In addition to the long-arm statute, the exercise of personal jurisdiction over a nonresident defendant must satisfy federal due process requirements. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of CA, Solano County,* 480 U.S. 102, 108, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co.,* 326 U.S. at 319, 66 S.Ct. 154). Due process is satisfied, enabling Texas courts to exercise personal jurisdiction over nonresident defendants, only if the defendants have minimum contacts with the state and the exercise of the jurisdiction will not offend traditional notions of fair play and substantial justice. *See BMC Software,* 83 S.W.3d at 795 (citing *Int'l Shoe Co.,* 326 U.S. at 316, 66 S.Ct. 154).

A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *American Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002). Specific jurisdiction exists if the defendant has purposefully directed his activities at residents of the forum and the litigation arises from alleged injuries that arise out of or relate to those activities. *See Burger King,* 471 U.S. at 472, 105 S.Ct. 2174; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction exists when the claims do not arise out of and are not related to the activities in the forum state, but the nonresident defendant has continuous and systematic contacts with

the forum state. *See Helicopteros,* 466 U.S. at 416–17, 104 S.Ct. 1868. In determining whether there is general jurisdiction, the minimum contacts analysis becomes more demanding, as the contacts must be substantial. *See BMC Software,* 83 S.W.3d at 797.

### a. Minimum Contacts

■ The constitutional touchstone of personal jurisdiction is whether the defendant purposefully established minimum contacts with the forum state. *See Burger King,* 471 U.S. at 474, 105 S.Ct. 2174; *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex.2005). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws." *Michiana,* 168 S.W.3d at 784 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). A defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174.

■ There are three aspects to purposeful availment that are relevant to our review. *See Michiana,* 168 S.W.3d at 785. First, we consider only the defendant's contacts with the forum. *Id.* Purposeful availment ensures a defendant will not be haled into a jurisdiction solely as the result of the unilateral activity of another party or a third person. *Id.; see also Burger King,* 471 U.S. at 475, 105 S.Ct. 2174.

■ Second, the acts upon which jurisdiction is based must be purposeful rather than random, fortuitous, or attenuated. *See Burger King,* 471 U.S. at 475, 105 S.Ct. 2174; *Michiana,* 168 S.W.3d at 785. A defendant who has deliberately engaged in significant activities within a forum state or created continuing obligations between himself and the residents has manifestly availed himself of the privilege of conducting business in the state. *See Burger King,* 471 U.S. at 475, 105 S.Ct. 2174; *see also Michiana,* 168 S.W.3d at 785.

■ Third, a defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Michiana,* 168 S.W.3d at 785; *see also Burger King,* 471 U.S. at 475–76, 105 S.Ct. 2174 (because defendant's activities directed toward forum are shielded by benefits and protections of forum's law, it is presumptively not unreasonable to require defendant to submit to burden of litigation in forum). By contrast, however, a defendant may purposefully avoid a particular jurisdiction by structuring its transactions so as to neither profit from the forum's laws nor be subject to its jurisdiction. *Michiana,* 168 S.W.3d at 785.

### b. Traditional Notions of Fair Play and Substantial Justice

■ In addition to minimum contacts, the exercise of personal jurisdiction must satisfy traditional notions of fair play and substantial justice. *Asahi Metal,* 480 U.S. at 113, 107 S.Ct. 1026; *BMC Software,* 83 S.W.3d at 795. Determining this issue involves consideration of the following factors: (1) the burden on the nonresident defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of several states in furthering substantive social policies. *Asahi Metal,* 480 U.S. at 113, 107 S.Ct. 1026; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). However, when a

nonresident has purposefully established minimum contacts with the forum state, it will be only a rare case when the exercise of jurisdiction over that defendant does not comport with traditional notions of fair play and substantial justice. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 231 (Tex.1991).

### C. Application of Law to Facts

#### 1. Effect of Untimely Findings of Fact and Conclusions of Law

 Rule 28.1 of the Texas Rules of Appellate Procedure provides that a trial court need not, but may, within thirty days after an interlocutory order is signed, file findings of fact and conclusions of law. *See* Tex.R.App. P. 28.1. The procedural rules do not preclude a trial court from issuing belated findings and conclusions. *Silbaugh v. Ramirez,* 126 S.W.3d 88, 91 (Tex.App.-Houston [1st Dist.] 2002, no pet.). *See also Morrison v. Morrison,* 713 S.W.2d 377, 380 (Tex.App.-Dallas 1986, writ dism'd). If a party can show harm from untimely findings, the appeal may be abated so the party can request amended or additional findings. *Silbaugh,* 126 S.W.3d at 91.

In this case, the trial court signed an order denying appellants' special appearances on June 7, 2006. On June 23, 2006, appellants filed a timely notice of appeal and a timely request for findings of fact and conclusions of law. Appellants filed a notice of past due findings of fact and conclusions of law on July 20, 2006.

Proposed findings of fact and conclusions of law were filed by Shaw on September 8, 2006. After requesting and receiving two extensions of time from this Court, appellants filed their appellate brief on September 19, 2006. On September 22, 2006, more than three months after signing the interlocutory order denying appel-

lants' special appearances, the trial court entered findings of fact and conclusions of law. Shaw's appellate brief was filed October 11, 2006.

None of the parties alleges harm due to the trial court's untimely filing of the findings and conclusions. Further, none of the parties requested an abatement of this appeal in order for the trial court to make additional findings or conclusions. Therefore, this Court will give the trial court's findings of fact and conclusions of law due consideration. *See id.* at 91–92.

#### 2. The Trial Court's Findings of Fact

 Although the trial court's findings of fact are not specifically challenged on appeal by appellants or Shaw, appellants argue in their fourth and fifth issues that the evidence is factually and legally insufficient to support the trial court's denial of their special appearances. Additionally, in their third issue, appellants contend the trial court's denial of their special appearances is against the great weight and preponderance of the evidence. However, aside from listing those assertions as issues, appellants do not otherwise discuss and further describe those assertions on appeal.

 The Texas Rules of Appellate Procedure require that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex.R.App. P. 38.1(h); *Kang v. Hyundai Corp.,* 992 S.W.2d 499, 503 (Tex. App.-Dallas 1999, no pet.). Points asserted on appeal, but not briefed, are waived. *Radenovich v. Eric D. Fein, P.C. & Assoc.,* 198 S.W.3d 858, 861 (Tex.App.-Dallas 2006, no pet.); *Smith v. Tilton,* 3 S.W.3d 77, 84 (Tex.App.-Dallas 1999, no pet.). *See also Ski River Dev., Inc. v. McCalla,* 167 S.W.3d 121, 141 (Tex.App.-Waco 2005, pet.

denied) (appellant waived legal and factual sufficiency points where argument consisted of one sentence in fifty-page brief and contained no citations to reporter's record).

In the case before us, appellants do not provide legal analysis or argument for their third, fourth, or fifth issues, nor do appellants identify the specific portions of the record that support those issues. Therefore, we conclude appellants have waived the third, fourth, and fifth issues asserted by them on appeal.

In light of our conclusion that appellants' third, fourth, and fifth issues are waived, the trial court's findings of fact are unchallenged on appeal.[2] When findings of fact are filed and unchallenged, those findings are binding on the appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding. *See McGalliard*, 722 S.W.2d at 696. After reviewing the record, we conclude the trial court's findings of fact are supported by the evidence. *See El Puerto*, 82 S.W.3d at 630. Accordingly, the trial court's findings of fact are binding on this Court.

### 3. The Trial Court's Conclusions of Law[3]

#### a. *Jurisdiction Over SNZ Based on Alter Ego Theory*

In their first issue, appellants assert the trial court erred in denying the special

---

**2.** The trial court made the following findings of fact:

1. Since the 1980's, Davey has visited Texas for business purposes. On occasion, Davey's business trips would last a few weeks to a month.
2. SNZ has exported animals to Texas since the mid-to-late 1990s and has had clients in Texas.
3. SNZ owns 100% of AST, a Texas corporation, and Davey owns 100% of AST.
4. Davey signed a lease for certain real property located in Krum, Texas (the "Krum Property"). The Krum Property is AST's headquarters. Davey, while in Texas, stays at the Krum Property.
5. SNZ's "financial officer," Melissa Ekmescic ("Ekmescic") has stayed at the Krum Property.
6. Davey slept as [sic] the Krum Property at least 250 nights in 2005.
7. Davey agreed to forgive the personal debt Shaw owed to him in consideration of Shaw's forgiving the corporate debt owed to Shaw by SNZ.
8. Davey co-signed on SNZ loans.
9. Davey could borrow money from SNZ's "shareholder's account."
10. SNZ helped AST import animals from New Zealand to Texas without any compensation.
11. SNZ and AST shared a financial officer, Melissa Esmescic [sic], who has stayed at the Krum Property while in Texas and is paid from New Zealand.

12. The headquarters of SNZ in New Zealand is located on property owned by Davey's family trust.
13. Certain SNZ invoices list SNZ as the exporter and AST as the importer.
14. While Davey has been in Texas working for AST, Davey has also conducted SNZ business.
15. After Shaw terminated his employment with AST in 2003, Davey came to Texas to manage AST until Shaw's successor could be found.
16. SNZ is 100% owned by Davey, and Davey is its sole corporate officer and shareholder.
17. AST is incorporated in Texas, SNZ is its sole shareholder, and after Shaw's resignation, Davey was its sole corporate officer. Prior to his resignation from AST, Shaw was also an officer of AST.
18. Davey owns other animal export/export [sic] businesses with the word "Source" in their names.

**3.** The trial court entered the following conclusions of law:

1. The Texas long arm statute permits Texas courts to exercise jurisdiction over a nonresident defendant that does business in Texas.
2. Personal jurisdiction over nonresident defendants meets the due process requirements of the Constitution when two conditions are met: (1) the defendant has estab-

appearance of SNZ. In conclusion of law number 3, the trial court concluded personal jurisdiction over SNZ is proper based on the alter ego theory of disregarding the corporate fiction. Appellants argue that because Shaw provided no evidence of actual fraud, personal jurisdiction cannot be predicated on the theory of alter ego.

Shaw contends no showing of fraud is required to establish jurisdiction based on the alter ego theory. He argues that because AST is incorporated in Texas and "SNZ and AST are clearly the 'alter ego' of each other," jurisdiction over SNZ is proper. Finally, in a footnote in his appellate brief, Shaw asserts he "would be prejudiced, or an injustice would result, if alter-ego is not found, as Davey has testified that SNZ is in debt and cannot pay its financial obligations."

■■■■ Generally, a corporation is a separate legal entity that insulates its owners or shareholders from personal liability. *See Hoffmann*, 180 S.W.3d at 345. Alter ego is a basis for disregarding the corporate fiction "where a corporation is organized and operated as a mere tool or business conduit of another corporation." *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex.1986). In addition, the theory of alter ego has been applied "when there is such unity between a corporation and an individual that the separateness of the corporation has ceased." *Hoffmann*, 180 S.W.3d at 347. Under the alter ego theory, personal jurisdiction may be estab-

lished by imputing the jurisdictional contacts of a corporate entity to its owners or parent corporation. *See Ramirez v. Hariri*, 165 S.W.3d 912, 916 (Tex.App.-Dallas 2005, no pet.); *BMC Software*, 83 S.W.3d at 798. The party seeking to ascribe one corporation's actions to another corporation or individual for jurisdictional purposes bears the burden of establishing the alter ego relationship. *Le Meridien Hotels & Resorts v. LaSalle Hotel Operating P'ship*, 141 S.W.3d 870, 881 (Tex.App.-Dallas 2004, no pet.); *see also BMC Software*, 83 S.W.3d at 798.

■■■ The Texas Supreme Court has limited applicability of the alter ego theory to cases in which the degree of control exercised by one entity over the other is greater than that normally associated with common ownership and directorship. *BMC Software*, 83 S.W.3d at 799. Specifically, the supreme court has stated, "[T]he evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *Id. See also Le Meridien Hotels*, 141 S.W.3d at 882 (evidence of "fraud or injustice" necessary to establish alter ego for jurisdictional purposes); *Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 376 (Tex.1984) (in addition to unity of interest, ownership, and control, plaintiff in alter ego case "must prove that he has fallen victim to a basically unfair device by which a corporate entity has been used to achieve an inequitable result"); *Hoffmann*, 180 S.W.3d at 347 (corporate fiction is

---

lished minimum contacts with the forum state; and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.
3. Personal jurisdiction over SNZ is proper based on the alter ego theory of disregarding the corporate fiction.
4. Davey's systematic and continuous contacts in Texas supports [sic] general jurisdiction over Davey.

5. The exercise of personal jurisdiction over SNZ and Davey comports with traditional notions of fair play and substantial justice.
Conclusions of law numbers 3, 4, and 5 are challenged by appellants.

disregarded "only when the corporate form has been used as a part of an unfair device to achieve an inequitable result" (citing *Castleberry*, 721 S.W.2d at 272)). *Cf.* TEX. BUS. CORP. ACT ANN. art. 2.21(A)(2) (Vernon 2003) (shareholder or affiliate of corporation cannot be obligated to corporation or its obligees on basis of alter ego unless obligee shows actual fraud).

Rule 299 of the Texas Rules of Civil Procedure provides in relevant part:

> When findings of fact are filed by the trial court they shall form the basis of the judgment upon all grounds of recovery and of defense embraced therein. The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact; but when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment.

TEX.R. CIV. P. 299.

Here, the trial court made no findings of fact with regard to "fraud or injustice," an essential element of the alter ego theory. *See BMC Software*, 83 S.W.3d at 799. Moreover, the evidence in the record does not support such a finding. The only evidence identified by Shaw to support his contention that he "would be prejudiced, or an injustice would result, if alter-ego is not found, as Davey has testified that SNZ is in debt and cannot pay its financial obligations," consists of deposition testimony of Davey.[4] It is not apparent from the face of the record, and Shaw does not explain, how Davey's deposition testimony, respecting Davey's version of events that occurred ten years ago, supports Shaw's contention of "injustice."

Shaw made no request that the trial court make findings of fact regarding "fraud or injustice" and the court made no such findings of fact. Omitted unrequested elements can be supplied by presumption only when supported by evidence. *See* TEX.R. CIV. P. 299. The record contains no evidence on which to supply by presumption a finding of fact of "fraud or injustice" on which to base a conclusion of alter ego. Accordingly, we determine the trial court erred in concluding personal jurisdiction over SNZ is proper based on the alter ego theory of disregarding the corporate fiction. Appellants' first issue is decided in their favor.

### b. General Jurisdiction Over Davey

In their second issue, appellants contend the trial court erred in denying the special appearance of Davey. In conclusion of law number 4, the trial court specifically con-

---

**4.** Shaw cites the following testimony:

> [COUNSEL FOR SHAW]: Why was it [1997] a difficult time for Source New Zealand?
>
> [DAVEY]: It seems to me that we had a very sharp change in the exchange rate in 1996, and that made exporting immediately unprofitable. So it became a time of, you know, very difficult business. We laid off staff and basically closed the operation down to quite an extent.
>
> [COUNSEL FOR SHAW]: So from your end regarding the alleged agreement to forgive [a debt of Shaw] in exchange for no longer having to pay the five percent com-
>
> mission, were those delinquent payments part of that, meaning—
>
> [DAVEY]: Sure.
>
> [COUNSEL FOR SHAW]:—the payments you had not made were included in what [sic] whole agreement? That you no longer were responsible for those payments?
>
> [DAVEY]: It was intended that all five percent payments would be included from the—the ones that were outstanding ongoing.
>
> [COUNSEL FOR SHAW]: Was that communicated clearly to Jasen?
>
> [DAVEY]: Oh, yes, I think we both understood the situation.

cluded Davey's systematic and continuous contacts in Texas support general jurisdiction over him. We must determine whether the trial court's findings of fact support the conclusion that Davey, individually, has purposefully availed himself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of our laws. *See Coleman*, 83 S.W.3d at 806. In order to do so, we must address the findings, the applicability of the "fiduciary shield doctrine," and whether the findings support a conclusion Davey is the alter ego of SNZ and AST.

#### i. Contentions of the Parties

Appellants argue the evidence supports Davey's contention that the fiduciary shield doctrine protects him from the imposition of general jurisdiction over him. They assert Davey "has not individually transacted business in Texas outside the scope of his work and duties as President of AST while working in Texas." Further, appellants contend that, regardless of the application of the fiduciary shield doctrine, Davey did not have systematic and continuous contacts with Texas.

Shaw asserts the fiduciary shield doctrine is not applicable, as Davey has "established minimum contacts with Texas outside of his role with SNZ." Specifically, Shaw asserts Davey has subjected himself to jurisdiction in Texas by taking business trips and conducting business in Texas, leasing a Texas residence individually, establishing a Texas corporation, and living and working in Texas for more than three years. Moreover, Shaw contends Davey "is the alter ego of both SNZ and AST."

#### ii. Fiduciary Shield Doctrine

▮ Under the fiduciary shield doctrine, in the absence of fraudulent or tortious acts, the transacting of business within the state, by an individual, solely on behalf of a corporation, does not create general jurisdiction over that individual. *See Hoffmann*, 180 S.W.3d at 352. Jurisdiction over an individual generally cannot be based on jurisdiction over a corporation with which he is associated unless the corporation is the alter ego of the individual. *Solow v. Century Assets Corp.*, 12 S.W.3d 512, 516 (Tex.App.-Beaumont 1999, no pet.). *See also Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex.1982) (absent allegation of specific act in Texas or one with reasonable foreseeable consequences within Texas, nonresident employee cannot be sued in Texas simply because his employer solicits business here). To defeat the protection of the fiduciary shield doctrine, the plaintiff must show that the individual defendant was "advancing his own interest" or that he was an alter ego of his employer. *Brown v. Gen. Brick Sales Co., Inc.*, 39 S.W.3d 291, 298 (Tex. App.-Fort Worth 2001, no pet.). *See also Royal Mortgage Corp. v. Montague*, 41 S.W.3d 721, 738 (Tex.App.-Fort Worth 2001, no pet.) (no personal jurisdiction existed over investors of corporation, where there was no evidence investors had any individual contacts with Texas); *Solow*, 12 S.W.3d at 516 (personal jurisdiction was proper over individual owner of corporation where evidence showed "personal rights" were granted to him under corporate agreement).

#### iii. Trial Court's Findings

The trial court made findings of contacts by Davey with Texas. We must determine whether those contacts advanced Davey's own interest.

The first finding respecting Davey is finding of fact number 1. It establishes Davey has visited Texas for "business purposes" on "business trips." There is no mention of Davey's individual interest respecting those visits. Thus, that finding

does not support a conclusion of an individual contact by Davey.

Next, we consider findings of fact numbers 4 and 6. Finding of fact number 4 states "Davey signed a lease for certain real property located in Krum, Texas (the "Krum Property"). The Krum Property is AST's headquarters. Davey, while in Texas, stays at the Krum Property." Finding of fact number 6 states "Davey slept as [sic] the Krum Property at least 250 nights in 2005." Neither of these findings of fact include a finding that Davey signed the Krum Property lease in his individual capacity, or that Davey leased or used the Krum Property individually, to advance his own interest.

Finally, finding of fact number 15 states Davey came to Texas in 2003 to manage AST until a successor for Shaw could be found. Because Davey's action in traveling to Texas in 2003 was based on the interest of AST, rather than Davey's individual interest, that finding does not support a conclusion of an individual contact by Davey with Texas.

 Now, we address whether other findings may be "presumed." "Rule 299 allows presumed findings on *unrequested* and omitted findings. It does not permit a finding to be presumed when that finding was *requested* and *refused* by the trial judge." *Boy Scouts of Am. v. Responsive Terminal Sys., Inc.*, 790 S.W.2d 738, 742 (Tex.App.-Dallas 1990, writ denied) (emphasis original) (quoting *Stretcher v. Gregg*, 542 S.W.2d 954, 958 (Tex.Civ. App.-Texarkana 1976, no writ)). *See also Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 252 (Tex.App.-Houston [14th Dist.] 1999, pet denied). "If the appellee drafts proposed findings of fact and conclusions of law that set forth every element of his ground of recovery or defense, and the trial court deletes one of the elements, the omitted element cannot later be sup-

plied on appeal by implication." *Vickery*, 5 S.W.3d at 253.

 Shaw's proposed findings of fact and conclusions of law included a finding that "Davey has consistently visited Texas for business purposes on behalf of himself, SNZ, and other business enterprises." In addition, Shaw proposed a finding that "Davey lives at the Krum office, which is leased in his name (and not on behalf of AST)." The trial court made no such findings. Findings that were "requested" by Shaw and "refused" by the trial court cannot be presumed under rule 299. *See Boy Scouts*, 790 S.W.2d at 742. We can find no basis for "presuming" other findings as to actions of Davey which might reflect contacts in Texas that advanced Davey's personal interest. TEX.R. CIV. P. 299.

iv. Contention Davey is Alter Ego of AST and SNZ

 Finally, Shaw contends Davey was the alter ego of AST and SNZ. The trial court made no such conclusions. Further, the trial court's findings of fact would not support such conclusions. As discussed above, the alter ego theory is applicable only when the evidence shows "that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *BMC Software*, 83 S.W.3d at 799. Here, the trial court's findings of fact do not include findings of fraud or injustice respecting the relationship of AST or SNZ with Davey. Further, as stated above, the record itself does not support such findings. *See* TEX.R. CIV. P. 299.

It is our decision the trial court's findings of fact do not support a conclusion that Davey, in his individual capacity, purposefully established any minimum contacts with Texas. *Cf. Light v. Wilson*, 663 S.W.2d 813, 814 (Tex.1983) (where there

858

was no finding of fact that owner of business, individually, violated Deceptive Trade Practices Act, and alter ego theory was not established, owner could not be held personally liable). Therefore, no basis existed for the trial court's conclusion that general jurisdiction was proper over Davey. *See Michiana*, 168 S.W.3d at 784. We decide in favor of appellants on their second issue.

### c. Personal Jurisdiction Over Appellants

In their sixth issue, appellants contend, generally, that the trial court erred in concluding personal jurisdiction exists over them. No separate briefing or argument is supplied as to this issue. In light of the above conclusions respecting the lack of minimum contacts of Davey and SNZ with Texas, we need not discuss this further. We determine the trial court erred in concluding personal jurisdiction exists over Davey and SNZ.

### III. CONCLUSION

We conclude the trial court erred in concluding personal jurisdiction over SNZ is proper based on the alter ego theory of disregarding the corporate fiction. In addition, we determine no basis existed for the trial court's conclusion that Davey's systematic and continuous contacts in Texas support general jurisdiction over Davey. Accordingly, we reverse the trial court's order denying appellants' special appearances and render judgment granting the special appearances of Davey and SNZ.