NUMBER 13-06-469-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ROBERT S. BENNETT, INDIVIDUALLY

AND THE BENNETT LAW FIRM, P.C., Appellants,


v.



STEPHEN T. LEAS, Appellee.

 


On appeal from the County Court at Law No. 4 


of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Yañez and Vela


Memorandum Opinion by Justice Yañez


 

 In this interlocutory appeal, appellants, Robert S. Bennett, individually, and the
Bennett Law Firm, P.C. (collectively, "Bennett"), challenge the trial court's denial of their
request to compel arbitration in this legal malpractice action filed against Bennett by
appellee, Stephen T. Leas. (1) By five issues, appellants contend the trial court erred in (1)
determining that some of the matters sought to be arbitrated fell outside the scope of the
arbitration agreement; (2) applying the "personal injury" exception to arbitration; (3) finding
that Bennett waived the arbitration provision; and (4) finding the arbitration clause
unenforceable as against public policy. We affirm.

Background 


 Leas, an attorney, asked Bennett to represent him in connection with several
pending grievance matters involving Maria H. Rodriguez. (2) Leas and Bennett entered into
an "Attorney Retainer Agreement" regarding the representation; the agreement contained
an arbitration clause. A few weeks later, Leas asked Bennett to represent him in several
other grievances filed against Leas by Gloria Ruel Herrera, Daniel Alvarez, and Candelaria
Reyes. (3) 

 Bennett contends that Leas failed to timely pay his invoices for legal services, and
in December 2003, Bennett sought to initiate arbitration. In March 2004, Leas sued
Bennett, requesting a declaratory judgment that Bennett was not entitled to arbitration. 
Bennett filed a plea in abatement, requesting abatement of Leas' petition and enforcement
of the arbitration agreement. 

 Following a hearing, the trial court signed an order abating both Leas' lawsuit and
Bennett's request for arbitration until the underlying grievance matters were completed. 
Bennett attempted to appeal the trial court's order; this Court dismissed the appeal for want
of jurisdiction. (4) Bennett filed a petition for review with the supreme court, but shortly
thereafter, Leas advised the trial court that the underlying matters had been completed. 
The trial court returned the case to its docket. 

 On April 18, 2006, Bennett again requested that the trial court order arbitration. 
Following a hearing, the trial court denied Bennett's request for arbitration. The trial court
issued findings of fact and conclusions of law on September 19, 2006. The trial court's
findings and conclusions included the following:

1. The Plaintiff [Leas] has alleged causes of action alleging legal
malpractice, breach of fiduciary duty, fraud and breach of contract against
Defendant [Bennett] concerning four (4) separate and independent cases in
which Defendant represented Plaintiff. They are known as "Rodriguez,"
"Herrera," "Alvarez," and "Reyes."


2. There is no written agreement signed by the parties that involve any
issues relating to the "Herrera," "Alvarez," and "Reyes" matters.


3. The Defendant, in a hearing before this Court on June 10, 2004, had
stipulated to this Court that the "Rodriguez" contract only concerned the
"Rodriguez" matter and no other matter.


4. There is a written contract between the parties concerning only the
"Rodriguez" matter that does contain an arbitration clause under the Texas
Arbitration Act (TAA).


5. One of the causes of action alleged by the Plaintiff concerning the
"Rodriguez" matter is for a personal injury.


. . . . 


7. The contract was not signed by either party's attorney of record.


8. The Plaintiff was not advised in writing by the Defendant to consult an
attorney prior to signing the agreement.


9. The Plaintiff was not independently represented when the agreement was
made between the parties.


10. The arbitration clause in the 'Rodriguez' matter attempts to limit the
liability of the Defendant for malpractice.


. . . . 


19. The Texas Civil Practice and Remedy [sic] Code § 171.001, states that,
for an arbitration agreement to be enforceable, that there must exist a written
agreement to arbitrate between the parties. Therefore, there being no
written contract with an arbitration agreement that exist[s] between the
parties concerning the "Herrera," "Alvarez," and "Reyes" matters, the
Defendant is not entitled to compel arbitration on those matters. 

 

20. The arbitration clause in the "Rodriguez" matter is in violation of the
Texas Rules of Professional Conduct, Rule 1.08(g), and as such is against
public policy and is therefore unenforceable. 

 

21. The Defendant has waived any right to arbitrate in the "Rodriguez"
matter, by substantially invoking the judicial process resulting in the Plaintiff
suffering actual prejudice. 


Standard of Review and Applicable Law


 

 When reviewing by interlocutory appeal an order denying arbitration under the TAA,
we apply a de novo standard to legal determinations and a "no evidence" standard to
factual determinations. (5) Under the "no evidence" standard, we view the evidence in the
light most favorable to the challenged finding and indulge every reasonable inference that
would support it. (6) We must credit favorable evidence and disregard contrary evidence only
if a reasonable factfinder could do so. (7) A legal sufficiency challenge to the findings of fact
will not be sustained if there is more than a scintilla of evidence to support the findings. (8) 
In conducting a factual sufficiency review, appellate courts may set aside a trial court's
finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly
wrong or unjust. (9)

 Under the TAA, a party seeking to compel arbitration must (1) establish the
existence of a valid, enforceable arbitration agreement and (2) show that the claims
asserted fall within the scope of that agreement. (10) If the movant establishes that an
arbitration agreement governs the dispute, the burden then shifts to the party opposing
arbitration to establish a defense to the arbitration agreement. (11) If the trial court concludes
the movant has met its burden and the party opposing arbitration has failed to prove its
defenses, the trial court has no discretion but to compel arbitration. (12) 

 Although courts generally enforce arbitration agreements, a court may not order
arbitration in the absence of such an agreement. (13) The parties' agreement to arbitrate
must be clear. (14) If one party denies that there is a binding arbitration agreement, the trial
court may summarily decide whether to compel arbitration on the basis of uncontroverted
affidavits, pleadings, discovery, and stipulations. (15) When a reviewing court is called upon
to decide whether the parties have agreed to arbitrate, it does not resolve doubts or indulge
a presumption in favor of arbitration. (16) Instead, it applies standard contract principles to
determine whether a valid arbitration agreement exists. (17) Whether there is an enforceable
agreement to arbitrate is a question of law and is therefore reviewed de novo. (18)

 Determining whether a claim falls within the scope of an arbitration agreement
involves the trial court's legal interpretation of the agreement, and we review such
interpretations de novo. (19) The burden lies with the party opposing arbitration to show that
the claims fall outside the scope of the arbitration agreement. (20) 

 We will not find error by the trial court and are required to uphold the trial court's
ruling if it is proper on any grounds. (21) 

Analysis 


 By their first issue, appellants contend the trial court erred in finding that the Alvarez,
Herrera, and Reyes matters are not within the scope of the arbitration agreement. 
Appellants contend that the "trial court's first, second, fourth, and nineteenth findings
and/or conclusions . . . are incorrect and should be disregarded." (22) Appellants challenge
the legal and factual sufficiency of the evidence supporting the trial court's third
finding--that Bennett stipulated to the court that the Rodriguez contract concerned the
Rodriguez matter only. 

 Appellants argue that although the arbitration agreement in the Rodriguez contract
does not mention the Alvarez, Herrera, and Reyes matters, those matters are nonetheless
covered by the arbitration clause "because they were within the attorney-client relationship
of Bennett and Leas." According to appellants, the trial court erred in failing to give full
effect to the provision stating that arbitration was applicable to any "controversy, claim, or
dispute in the course and scope of the Attorney-Client relationship or arising out of or
relating to this Agreement . . . ."

 As to the court's third finding that Bennett stipulated at a June 10, 2004 hearing (23)
that the Rodriguez contract concerns only the Rodriguez matter, appellants assert that the
finding is "simply not true." According to appellants, Bennett stipulated that "the contract
in question mentions only the Rodriguez matter and no other matters," but made no
stipulation regarding whether the arbitration clause was broad enough to encompass the
additional matters.

 We begin with appellants' challenge to the legal and factual sufficiency of the
evidence supporting the court's third finding that Bennett stipulated at the June 10, 2004
hearing that the Rodriguez contract concerns only the Rodriguez matter. (24) At the hearing,
appellee and Robert Bennett provided argument and testimony:

[Robert Bennett]: . . . To go back to testify now about these, all the cases,
by sworn answer, Mr. Leas agrees that I was hired to represent him on the
Rodriguez case. The Rodriguez case was where there was a signed
contract.


 Then, as we went along in our relationship, I was also, besides the
Rodriguez case, asked to represent him--I"ll try to get these--all four
matters straight--Herrera, Alvarez-Reyes--I'm sorry. Herrera is the second. 
Alvarez, slash, Reyes (Alvarez/Reyes) is the third, and Cuellar is the fourth.

 

 And Mr. Leas testifies that he asked me to represent him besides the
Rodriguez matter in the other three. He states that he never objected to the
way that those four matters were billed. He never objected to them being
billed under one invoice number prior to the lawsuit he filed. He testifies that
he never objected to all matters being billed together. He never made a
written request at any time that these matters be separated out. He never
requested separate invoices. He never separated out his payments, or the
payments that he sent were for all the works [sic] provided. And, as of today,
he has provided no documentation to me or to the Court in any way
contradicting our Motion to Transfer Venue. 


. . . .


[Leas]: Your Honor, once again, the basis of my objection was that he's
[Robert Bennett] attempting to make [the Rodriguez contract] the basis of the
agreement on several different contracts, which simply cannot be done. I
denied that at--in No. 3, Request for Admissions there, I denied that they
were the same terms, the oral contracts, as the written contracts.


 Now, if, one, it be stipulated that this is (25) as to the Rodriguez matter
and the Rodriguez matter only, that's what the contract says. But to the
other matters, no, sir, they're not.


[Court]: Only--as to Rodriguez only?


[Leas]: Right.


[Court]: Not the other people?


[Leas]: Right.


[Court]: Reyes, Cuellar, and . . . 


[Leas]: Yes, Your Honor. There is no written contract on those issues.


[Court]: Okay. Mr. Bennett?


[Robert Bennett]: Your Honor, I accept that. I'd like to go through and make
sure that the other requests are also either agreed or the Court takes judicial
notice. 


 We conclude that appellants' argument before the trial court is essentially the same 
as their argument on appeal: that the Rodriguez contract is the only "signed contract," but 
the arbitration agreement should be construed as applicable to the additional matters
because appellee "never objected" to the matters being treated collectively for billing and
payment purposes. We also conclude that the third finding--that appellants stipulated that
the Rodriguez contract only "concerned" the Rodriguez matter--does not necessarily
preclude appellants' argument that although the arbitration agreement specifically 
pertained or "concerned" only the Rodriguez matter, it should nonetheless be interpreted
to encompass the additional matters. After reviewing the record, we conclude there is
more than a scintilla of evidence to support the trial court's third finding. (26) We also cannot
say that the third finding is so contrary to the overwhelming weight of the evidence as to
be clearly wrong or unjust. (27)

 We now turn to appellants' argument that the trial court erred in finding that the
Alvarez, Herrera, and Reyes matters are not within the scope of the arbitration agreement. 
Appellants argue that because the additional matters are within their attorney-client
relationship with Leas, and the agreement applies to any dispute in the course and scope
of the attorney-client relationship, the matters are subject to the arbitration agreement. We
are unpersuaded by appellants' argument.

 The initial paragraph of the Rodriguez contract states:

The purpose of this agreement is to set forth our understanding and
agreement ("Agreement"), pursuant to which our law firm, THE BENNETT
LAW FIRM ("Firm"), has agreed to represent STEPHEN T. LEAS ("Client" or
"you") in the following referenced matters: State Bar of Texas Grievance
Matters; Appeal and Motion to Reconsider - S2080103329; Maria H.
Rodriguez - Stephen T. Leas and BODA Case No. 26618; Stephen T. Leas
v. Commission for Lawyer Discipline ("Matters")[.] We have, of course,
discussed these Matters with you previously, but it is prudent that our
understandings be documented to prevent any confusion or
misunderstanding in the future. 


Paragraph "C" in section "V" of the contract states:


The legal fees agreed upon herein are for representation of the Client in the
above referenced Matters and do not include Firm's legal services in any
other matter. In the event that representation is required in any other court
or regarding any other matter, a new agreement must be made between the
Firm and the Client. 


Section "VIII," entitled "Arbitration," states, in pertinent part:


To further clarify our agreement on arbitration, arbitration would apply to any
controversy, claim or dispute in the course and scope of the Attorney-Client
relationship or arising out of or relating to this Agreement or the breach,
termination, enforcement, interpretation or validity thereof, including the
determination of the scope or applicability of this agreement to arbitrate. Our
dispute shall be determined by arbitration in Houston, Texas before a solo
arbitrator, in accordance with the laws of the State of Texas for agreements
made in and to be performed in Texas. 


"Disputes" shall include, without limitation, those involving fees, costs, billing,
and breach of ethical or fiduciary duties. 


 Appellants submitted the affidavit of Robert Bennett, which was attached to
appellants' Plea in Abatement and Motion to Transfer Venue. In the affidavit, Bennett
states that Leas "had the Firm take on the additional cases, and representation in these
cases was undertaken on the mutual consent of both parties that the representation in all
cases would be handled per the terms of the original contract."

 The trial court found that there was no written agreement between the parties
regarding the Herrera, Alvarez, or Reyes matters (finding number two). It also found that
because there was no written agreement to arbitrate as to these parties, as required by
section 171.001 of the civil practice and remedies code, (28) appellants were not entitled to
arbitration on those matters. We agree.

 The record contains no evidence of any written agreements to arbitrate regarding
the Herrera, Alvarez, or Reyes matters (and appellants do not contend that such written
agreements exist). The statute does not provide that an arbitration agreement is
enforceable if it is based on the mutual verbal consent of the parties. We hold the trial
court did not err in concluding that appellants were not entitled to compel arbitration with
regard to the Herrera, Alvarez, and Reyes matters. We overrule appellants' first issue.

Personal Injury Exception


 In their second and third issues, appellants contend the trial court erred in applying
the "personal injury" exception in section 171.002(a)(3) of the civil practice and remedies
code because (1) a legal malpractice claim is not a claim for "personal injury" (second
issue), and (2) Bennett and Leas were both attorneys at the time they signed the
agreement (third issue). Appellants urge this Court to "disregard" the trial court's fifth
through ninth findings of fact and conclusions of law. 

 As appellants note, this Court has held that a claim for legal malpractice is a claim
for personal injury within the meaning of section 171.002(a) of the TAA. (29) The TAA does
not apply to a claim for personal injury unless each party to a claim, on the advice of
counsel, agrees to arbitrate in writing, and the agreement is signed by each party and each
party's attorney. (30) The trial court found that (1) one of appellee's claims in the Rodriguez
matter was a claim for personal injury; (2) neither party's attorney signed the agreement;
(3) appellee was neither advised in writing to consult an attorney before signing the
agreement nor independently represented when signing the agreement.

 Although appellants urge us to "disregard" the trial court's finding that the Rodriguez
contract was not signed by either party's attorney of record, the record is clear that it was
not. The only signatures that appear on the contract are those of Leas and Robert
Bennett. Appellants argue that even if we find that appellee's malpractice claim is a claim
for personal injury, the arbitration clause nonetheless complies with the TAA's
requirements because both parties were attorneys. (31) The statute, however, provides that
arbitration does not apply to personal injury claims unless "each party to the claim, on the
advice of counsel, agrees in writing to arbitrate" and "the agreement is signed by each
party and each party's attorney." (32) The statute does not provide an exception if the parties
are attorneys. (33) We hold the evidence is legally and factually sufficient to support the trial
court's finding that "[t]he contract was not signed by either party's attorney of record." We
overrule appellants' third issue. Thus, if appellee's legal malpractice claim is a claim for
personal injury, the trial court did not err in denying arbitration because the Rodriguez
contract does not comply with section 171.002(c). 

 Appellants note that since this Court's holding in Godt, three of our sister courts
have held that a legal malpractice claim is not a claim for personal injury. (34) In In re
Hartigan, the San Antonio court relied on a "plain reading of section 107.002" to conclude
that a legal malpractice claim "is not specifically prohibited from arbitration." (35) The Hartigan
court criticized our reliance on the cases cited in Godt, and argued that there is nothing in
the legislative history of section 107.002 to show that the legislature intended for the
personal injury provision to extend to legal malpractice claims. (36) In Hartigan, the plaintiff's
legal malpractice claim against her attorneys arose from her representation in a divorce
proceeding. (37)

 In Miller v. Brewer, the Amarillo court followed the rationale of the Hartigan court in
"refus[ing] to hold that a legal malpractice suit [is] per se one for personal injuries." (38) The
Miller court reasoned that the plaintiff's legal malpractice claim arose "out of a suit for
economic losses as a result of employment discrimination," and was therefore--like the
malpractice claim in Hartigan arising from representation in a divorce proceeding--"not a
suit for personal injuries" within the purview of the statute. (39)

 Finally, in Taylor v. Wilson, the Fourteenth Court of Appeals reached the same
conclusion as the Hartigan and Miller courts in holding that a legal malpractice claim is not
a claim for personal injury. (40) In Wilson, the court noted that the plaintiff's "underlying claim
was for economic losses rather than for personal injury." (41) The Wilson court also relied on
the legislative history of the TAA, which, according to the court, "reveals the legislature
intended to restrict the scope of the personal injury exception to physical personal injury." (42)

 In his concurring opinion in Wilson, Justice Frost noted that "[t]he term 'personal
injury' has been used in both a narrow sense of 'bodily injury' and a broader sense,
meaning a personal wrong, including libel, slander, malicious prosecution, assault, and
false imprisonment, as well as bodily injury." (43) Justice Frost concluded that a legal
malpractice claim is not a personal-injury claim under either the narrow or broad definition
because it "does not involve bodily injury, and it does not involve injuries to rights regarding
the person." (44) Justice Frost also criticized the majority's legislative history argument, noting
that it relies solely on a statement expressing an opinion of the author of a comment, and
is therefore, "not part of the legislative history at all." (45) 

 In Godt, we cited Sample v. Freeman (46) and Estate of Degley v. Vega (47) in support
of our holding that a legal malpractice claim is a claim for personal injury within the
meaning of section 171.001(a). (48) We recognize that our sister courts have declined to
follow Godt. However, absent guidance from the supreme court on this issue, we decline
to abandon our earlier precedent. (49)
 We conclude the trial court did not err in finding that
one of appellee's claims in the Rodriguez matter (legal malpractice) was a claim for
personal injury. We overrule appellants' second issue. 

 Because we have determined that appellee's legal malpractice claim is a claim for
personal injury within the meaning of section 171.001(a), and the Rodriguez contract does
not comply with the statutory requirements of section 171.001(c), we hold that the trial
court did not err in denying arbitration. Accordingly, we AFFIRM the trial court's order
denying appellants' request to compel arbitration. 

 Because we are required to uphold the trial court's ruling if it is proper on any
grounds, (50) we need not address appellants' remaining issues. (51) 


 

 LINDA REYNA YAÑEZ,

 Justice




Dissenting Memorandum Opinion 

by Justice Rose Vela.


Memorandum Opinion delivered and 

filed this the 26th day of June, 2008.









 
1. The Texas Arbitration Act (TAA) expressly grants interlocutory jurisdiction over denials of
applications to compel arbitration. Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1) (Vernon 2005); see In
re D. Wilson Constr. Co., 196 S.W.3d 774, 778-79 (Tex. 2006) (orig. proceeding). Appellee asserts that "it
is undisputed that only the Texas Arbitration Act is applicable." Appellants do not dispute this assertion. The
arbitration paragraph provides for arbitration "administered by the American Arbitration Association (AAA)"
"in accordance with the laws of the State of Texas."
2. The matters referenced in the Rodriguez "Attorney Retainer Agreement" are "State Bar of Texas
Grievance Matters; Appeal and Motion to Reconsider - S2080103329; Maria E. Rodriguez - Stephen T. Leas
and BODA Case No. 26618; Stephen T. Leas v. Commission for Lawyer Discipline." 
3. Although the record contains letters of representation and "Attorney Retainer Agreements" between
Bennett and Leas regarding these matters, the agreements are not signed by Leas. 
4. See Robert S. Bennett, Individually, et al. v. Stephen T. Leas, No. 13-04-362-CV, (Tex. App.-Corpus
Christi March 17, 2005) (per curiam) (memo op.)(not designated for publication). 
5. TMI, Inc. v. Brooks, 225 S.W.3d 783, 791 (Tex. App.-Houston [14th Dist.] 2007, pet. denied). 
6. Id. (citing City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005)). 
7. Id. 
8. Davey v. Shaw, 225 S.W.3d 843, 849 (Tex. App.-Dallas 2007, no pet.). 
9. Id. 
10. Brooks, 225 S.W.3d at 791; Cappadonna Elec. Mgmt. v. Cameron County, 180 S.W.3d 364, 370
(Tex. App.-Corpus Christi 2005, orig. proceeding) (citing In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571,
573 (Tex. 1999) (orig. proceeding); In re C & H News Co., 133 S.W.3d 642, 645 (Tex. App.-Corpus Christi
2003, orig. proceeding)). 
11. McReynolds v. Elston, 222 S.W.3d 731, 739 (Tex. App.-Houston [14th Dist.] 2007, no pet.). 
12. Id. 
13. Cappadonna, 180 S.W.3d at 370 (citing Freis v. Canales, 877 S.W.2d 283, 284 (Tex. 1994)). 
14. Id. (citing Mohamed v. Auto Nation USA Corp., 89 S.W.3d 830, 835 (Tex. App.-Houston [1st Dist.]
2002, no pet., combined appeal & orig. proceeding)).
15. Id. (citing Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 269 (Tex. 1992) (orig. proceeding)). 
16. In re Bunzl U.S.A., Inc., 155 S.W.3d 202, 209 (Tex. App.-El Paso 2004, orig. proceeding). 
17. Id. 
18. D. Wilson Constr. Co., 196 S.W.3d at 781; McReynolds, 222 S.W.3d at 739; Cappadonna, 180
S.W.3d at 370. 
19. McReynolds, 222 S.W.3d at 740. 
20. Id. 
21. Grand Homes 96, L.P. v. Loudermilk, 208 S.W.3d 696, 702 (Tex. App.-Fort Worth 2006, pet. filed)
(citing Owens-Corning Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43, 41 (Tex. 1998) (requiring us to uphold
trial court's evidentiary ruling if it is proper on any grounds); Harwell v. State Farm Mut. Auto. Ins. Co., 896
S.W.2d 170, 173 (Tex. 1995) (holding summary judgment must be upheld if it is proper on any grounds)). 
22. In their brief, appellants refer to the trial court's findings of fact and conclusions of law issued on
August 2, 2006 and on September 18, 2006. The court's August 2, 2006 findings and conclusions are
included in its September 18, 2006 findings. Therefore, for ease of reference, we refer to the September 18,
2006 findings. 
23. The reporter's record reflects that the hearing occurred on June 9, 2004. The hearing addressed
appellee's plea to abate appellants' suit for collection of attorneys' fees pending disposition of the underlying
matters. The hearing also addressed appellants' motion to transfer venue (of appellee's malpractice suit) and
motion to abate (same) based on the arbitration agreement. 
24. We note that appellants have specifically challenged the legal and factual sufficiency of the
evidence supporting only the trial court's third finding. With regard to the remaining findings, appellants simply
argue, without reference to any legal or factual sufficiency standard, that this Court "should disregard" the trial
court's findings and conclusions. Appellee does not raise any challenge as to whether appellants have
adequately briefed their issues, and we do not address the issue. 
25. The record shows that the "this" referred to is a request for admission from appellants to Leas,
stating:


Admit that the last sentence of the second paragraph pf Part VIII of the contract states, 'Our
dispute shall be determined by arbitration in Houston, Texas, before a solo arbitrator, in
accordance with the laws of the State of Texas for agreements made in and to be performed
in Texas.'
26. See Shaw, 225 S.W.3d at 849. 
27. See id. 
28. See Tex. Civ. Prac. & Rem. Code Ann. § 171.001(a) (Vernon 2005) (providing that a written
agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that: (1) exists
at the time of the agreement; or (2) arises between the parties after the date of the agreement).


 
29. In re Godt, 28 S.W.3d 732, 739 (Tex. App.-Corpus Christi 2000, orig. proceeding); see Tex. Civ.
Prac. & Rem. Code Ann. § 171.002(a)(3) (Vernon 2005).
30. See Tex. Civ. Prac. & Rem. Code Ann. § 171.002(a)(3), (c). 
31. Leas contends that at the time he signed the Rodriguez contract, he was not licensed to practice
law in the State of Texas. We need not address this argument. 
32. See id. at § 171.002(c) (emphasis added).
33. We note that appellants' argument--that a party meets the requirement if he/she is an attorney--
is best directed to the Texas Legislature. We also note that in this case, there is no evidence suggesting that
either party (both of whom were lawyers) was acting in his capacity as a lawyer representing himself as a
party. We express no opinion regarding whether any such evidence could satisfy the statutory requirements. 
 
34. See Taylor v. Wilson, 180 S.W.3d 627, 631 (Tex. App.-Houston [14th Dist.] 2005, pet. denied);
Miller v. Brewer, 118 S.W.3d 896, 898 (Tex. App.-Amarillo 2003, no pet.) (per curiam); In re Hartigan, 107
S.W.3d 684, 690 (Tex. App.-San Antonio 2003, orig. proceeding). 
35. In re Hartigan, 107 S.W.3d at 690. 
36. See id. 
37. See id. at 687. 
38. Miller, 118 S.W.3d at 898. 
39. Id. at 898-99.
40. Taylor, 180 S.W.3d at 631. 
41. Id. at 630. 
42. Id. 
43. Id. at 632 (Frost, J., concurring). 
44. Id. at 632-33. 
45. Id. at 634 (citing Robert J. Kraemer, Attorney-Client Conundrum: The Use of Arbitration Agreements
for Legal Malpractice in Texas, 33 St. Mary's L.J. 909, 933 n.139 (2002).
46. Sample v. Freeman, 873 S.W.2d 470, 476 (Tex. App.-Beaumont 1994, writ denied). 
47. Estate of Degley v. Vega, 797 S.W.2d 299, 302-03 (Tex. App.-Corpus Christi 1990, no writ). 
48. Godt, 28 S.W.3d at 738-39.
49. We note that this issue is currently before the supreme court. In the appellants' brief in Chambers,
et al. v. O'Quinn, 2007 TX S. Ct. Briefs LEXIS 592, **15, appellants state: 


The Supreme Court should exercise jurisdiction to hear and decide the most important issues
of whether a compulsory arbitration clause, in an attorney-client contingency fee contract
involving a personal injury/property damage case is enforceable, and whether, incidental to
that overriding issue, whether the Petitioners "intentionally, voluntarily, intelligently and
knowingly" waived their constitutional right to a trial by jury.


50. See Loudermilk, 208 S.W.3d at 702. 
51. See Tex. R. App. P. 47.1.