Opinion issued December 3, 2009


















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-08-00794-CV
__________
 
BOB CRAIG AND 6030 SOUTH RICE, LTD., Appellants
 
V.
 
JACOBO VARON AND CHARTER TITLE COMPANY, Appellees
 

 
 
On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2005-01486
 

 
 
MEMORANDUM OPINION
          Appellants, Bob Craig and 6030 South Rice, Ltd. (“South Rice”), challenge the
trial court’s judgment, rendered after a nonjury trial, in favor of appellees, Jacobo
Varon and Charter Title Company (“Charter”), on the parties’ claims against each
other for breach of a real estate contract. In three issues, Craig and South Rice
contend that the trial court erred in finding that Craig had breached the contract (the
“Contract”), the trial court erred in not finding that Varon had repudiated the
Contract, and the judgment in favor of Charter is “defective because Charter failed
to plead any cause of action against Craig, individually, and only suffered damages
of attorney’s fees.” 
          We affirm. 
Factual and Procedural Background
          In his original petition, Craig alleged that he, on November 10, 2004, entered
into the Contract with Varon to sell Varon a parcel of commercial real estate for
$1,315,000. Varon deposited $50,000 in earnest money with Charter pursuant to the
Contract, and the parties agreed to close on or before December 10, 2004. Craig
further alleged that he “tendered performance to [Charter] on December 10, 2004,”
but Varon failed to fulfill his obligations to timely close the Contract. Craig asserted
a claim for breach of contract and sought the earnest money as his liquidated
damages. Craig also sought a declaratory judgment stating that he was entitled to
receive the earnest money as his liquidated damages and Varon had no claim to the
earnest money or the property. Craig also sought his attorney’s fees under the
Declaratory Judgment Act


 and under the terms of the Contract. In an amended
petition, Craig dropped his breach of contract claim but maintained his claim for a
declaratory judgment. 
          Craig attached to his amended petition a copy of the Contract, which provided
that the effective date of the Contract was November 10, 2004, and that Varon had
the right to terminate the contract within twenty-one days after the effective date by
providing Craig with written notice of termination. The Contract also provided that
if Varon timely terminated the Contract, the earnest money would be refunded to
Varon, less a nominal fee. Under paragraph 9A of the Contract, if either party failed
to close by the December 10, 2004 closing date, the non-defaulting party could
exercise the remedies in Paragraph 15, which states, 
A.      If Buyer fails to comply with this contract, Buyer is in default and
Seller may as Seller’s sole and exclusive remedy: (1) terminate
this contract and receive the earnest money as liquidated
damages, thereby releasing the parties from this contract; or (2)
seek other relief as may be provided by law,
 
. . . 
 
C.. . . [I]f Seller fails to comply with this contract, Seller is in
default and Buyer may as Buyer’s sole and exclusive remedy: (1)
terminate this contract and receive the earnest money, less any
independent consideration under Paragraph 7B(3)(a), as
liquidated damages, thereby releasing the parties from this
contract; or (2) enforce specific performance.
 
          Varon filed a general denial in this lawsuit and a separate breach of contract
lawsuit against Craig and Charter. After the trial court consolidated both lawsuits,



it realigned the parties with Craig, as plaintiff/counterdefendant; Varon, as
defendant/counterplaintiff/third-party plaintiff; South Rice, as third-party defendant;
and Charter, as third-party defendant. 
          Charter then filed a cross-claim against South Rice, alleging that after the
transaction failed to close, Charter released the earnest money to South Rice pursuant
to South Rice’s agreement to defend and indemnify it in any resulting litigation. 
Charter demanded that South Rice defend and indemnify it for damages and
attorney’s fees incurred in the litigation, and it asserted claims against South Rice in
the event that Varon recovered damages from Charter.


 
          Charter attached to its cross-claim a copy of its indemnity agreement with
South Rice, which the parties executed upon Charter’s release of the earnest money.
The indemnity agreement identified South Rice as the “indemnitor,” and Bob Craig
and Harry Craig signed it as managers of Craig GP, LLC, the general partner of South
Rice. In the indemnity agreement, South Rice declared Varon in default of the
Contract because of Varon’s failure to perform and South Rice instructed Charter to
release the earnest money to it pursuant to the Contract. Charter agreed to release the
earnest money based upon South Rice’s agreement to indemnify it against any
damages arising from any litigation brought by Varon. 
          In the trial,


 Craig testified that Charter scheduled the closing for December 10,
2004. Craig called Charter multiple times on the closing date, but was informed him
that Varon had not appeared to close. Craig explained that because closing did not
occur, he exercised his rights under the Contract’s default provisions. Even though
he did not personally appear at the closing, Craig noted that South Rice’s lawyer had
sent “all the closing papers” to Charter, the lawyer had been in contact with Kim
LaVern, the escrow agent at Charter, and he told her that “we could go by [Charter]
and do what we needed to do to perform” if Varon appeared at closing.
          Craig further testified that he and his brother, Harry, had formed South Rice,
a limited partnership, to buy and hold the property. Craig explained that he acted as
South Rice’s agent to sell the property, the general partner of South Rice was “Craig
GP LLC,” he and his brother were the managers of Craig GP LLC, and he had the
authority to sign the Contract and sell the property on behalf of South Rice and Craig
GP LLC. Craig conceded that “we indemnified” Charter for releasing the earnest
money to South Rice. 
          On cross-examination, Craig agreed that South Rice was a separate entity and
that his brother owned one-half of South Rice. He stated that he signed the indemnity
agreement with Charter on behalf of South Rice. He agreed that he signed the
Contract in his individual name and that South Rice’s name did not appear on the
Contract. However, he asserted that his brother did not need to sign the closing
documents in order for the sale to be consummated. Craig agreed that he did not
appear in person at Charter’s office on the closing date and he, individually, had
agreed to “stand behind” the indemnity agreement, although he later provided
conflicting testimony on this issue. 
          Kim LaVern, the Charter escrow agent, testified that on December 9, 2004, she
learned that Varon, the buyer, would not be ready to close on December 10, 2004. 
She had received non-executed closing documents from “the seller,” and it was her
“understanding” that if Varon elected to attend the closing, South Rice intended to
execute the closing documents. LaVern noted that Craig had called her several times
on the day of closing to see if he needed to attend the closing, and she opined that
Craig and South Rice did everything in their power to close the transaction. 
          However, LaVern also agreed that the Contract identified Craig, individually,
as the seller and not South Rice, which was the record title owner of the property. 
LaVern explained that Charter would not have issued a title insurance policy, as
required by the Contract, if Craig had attempted to sign the deed in his individual
capacity. Although LaVern provided some conflicting testimony on this issue,
LaVern, during Varon’s examination, agreed that the documents that she had received
from Craig were not signed and Charter would not prepare a title policy based upon
the unsigned documents. She further noted that some of the closing documents would
have to have been signed by Craig’s brother, who was also a manager of the general
partner of South Rice, the actual owner of the property. LaVern also agreed that
“there were a lot of things that had to be done” before Charter would have closed the
transaction and issued a title policy on the property.  
          Varon, a medical doctor, testified that he originally wanted to purchase the
property for his personal office. However, he did not appear at closing because he
had timely cancelled the Contract pursuant to the contractual termination procedures.


 
Mark Ray, Varon’s real estate broker, testified that, after discovering problems with
the property, Varon decided to terminate the Contract. 
          Following the trial, the trial court entered numerous findings of fact and
conclusions of law. The trial court found that the property was owned by South Rice
and not Craig individually; South Rice was not named in the Contract; South Rice
was not a signatory to the Contract and was not a named party to the Contract; there
was no written agreement identifying Craig as the trustee for South Rice; Varon did
not terminate the Contract under the termination provisions; Craig and Varon both
failed to appear at the scheduled December 10, 2004 closing; as a result of failing to
appear both Craig and Varon were in default under the Contract; Craig had sent a set
of unsigned documents to Charter before the closing date; South Rice held title to the
property on the closing date; in January 2005, Charter released the earnest money to
South Rice; South Rice agreed to indemnify Charter for releasing the earnest money;
Varon demanded that Charter and Craig return his earnest money; and neither Craig
nor Varon qualified as a “non-defaulting party” under paragraph 9A of the Contract. 
The trial court concluded that under the provisions of Paragraph 9 of the Contract a
non-defaulting party may exercise the remedies in Paragraph 15 of the Contract;
neither Craig nor Varon was a non-defaulting party; “the Contract default provisions
are ambiguous when and where both the Seller and Buyer are in default as here”; 
Varon was entitled to the return of his earnest money; Craig’s failure to authorize
Charter to release the earnest money to Varon constituted a breach of the Contract;
Charter breached its fiduciary duties to Varon when it released the earnest money to
South Rice; and Varon was entitled to judgment against Craig, South Rice, and
Charter. In its final judgment, the trial court awarded Varon the sum of $50,000, plus
interest and costs, against Craig, South Rice, and Charter. The trial court also
awarded Varon his attorney’s fees.  
          The trial court subsequently entered additional findings of fact and
conclusions, in which it found that Craig and South Rice had agreed to indemnify
Charter in connection with Varon’s claims for the earnest money, including attorney’s
fees and costs. The trial court then entered an amended judgment, in which it restated
its award of $50,000 to Varon against Craig, South Rice, and Charter and its award
of attorney’s fees to Varon against Craig. It also ordered that Charter “have judgment
over against” Craig and South Rice for the $50,000 awarded to Varon against Craig,
South Rice, and Charter. It further ordered that Charter recover its attorney’s fees and
costs from Craig and South Rice. 
Standard of Review
          In an appeal of a judgment rendered after a nonjury trial, a trial court’s findings
of fact have the same weight as a jury’s verdict, and we review the legal and factual
sufficiency of the evidence used to support them just as we would review a jury’s
findings. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); Daniel v. Falcon
Interest Realty Corp., 190 S.W.3d 177, 184 (Tex. App.—Houston [1st Dist.] 2005,
no pet.). In conducting a legal sufficiency review of the evidence, we must consider
all of the evidence in the light most favorable to the verdict and indulge every
reasonable inference that would support it. City of Keller v. Wilson, 168 S.W.3d 802,
822 (Tex. 2005). In determining whether legally sufficient evidence supports the
finding under review, we must consider evidence favorable to the finding if a
reasonable fact finder could consider it, and disregard evidence contrary to the
finding unless a reasonable fact-finder could not disregard it. Id. at 827; Brown v.
Brown, 236 S.W.3d 343, 348 (Tex. App.—Houston [1st Dist .] 2007, no pet.). In a
legal sufficiency challenge on an issue on which an appellant bears the burden of
proof, he must demonstrate that the evidence conclusively established all vital facts
to support the issue. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989);
Solares v. Solares, 232 S.W.3d 873, 878–79 (Tex. App.—Dallas 2007, no pet.).
          In reviewing a factual sufficiency challenge, we consider and weigh all of the
evidence supporting and contradicting the challenged finding and set aside the
finding only if the evidence is so weak as to make the finding clearly wrong and
manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); see Plas-Tex, Inc.
v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). When a party is challenging
the factual sufficiency of a finding regarding an issue upon which that party had the
burden of proof, that party must demonstrate that the adverse finding is against the
great weight and preponderance of the evidence. Dow Chem. Co. v. Francis, 46
S.W.3d 237, 242 (Tex. 2001). 
          We review a trial court’s conclusions of law de novo, and we will uphold the
conclusions if the judgment can be sustained on any legal theory supported by the
evidence. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex.
2002); In re Moers, 104 S.W.3d 609, 611 (Tex. App.—Houston [1st Dist.] 2003, no
pet.). Although a trial court’s conclusions of law may not be challenged for factual
sufficiency, we may review the legal conclusions drawn from the facts to determine
whether the conclusions are correct. BMC Software Belgium, N.V., 83 S.W.3d at 794. 
If we determine that a conclusion of law is erroneous, but that the trial court
nevertheless rendered the proper judgment, the error does not require reversal. Id.;
Vaughn v. DAP Fin. Servs., 982 S.W.2d 1, 6 (Tex. App.—Houston [1st Dist.] 1997,
no pet.). 
          When findings of fact are filed and unchallenged, those findings are binding
on the appellate court unless the contrary is established as a matter of law, or if there
is no evidence to support the finding. Davey v. Shaw, 225 S.W.3d 843, 853 (Tex.
App.—Dallas 2007, no pet.). Finally, we note that the trial court acts as fact-finder
in a bench trial and is the sole judge of the credibility of witnesses. See Murff v.
Murff, 615 S.W.2d 696, 700 (Tex. 1981); HTS Servs., Inc. v. Hallwood Realty
Partners, L.P., 190 S.W.3d 108, 111 (Tex. App.—Houston [1st Dist.] 2005, no pet.).
Breach of Contract
          In their first issue, Craig and South Rice argue that the trial court erred in
finding that Craig had breached the Contract by failing to appear at the closing
because there was “no provision in the Contract requiring Craig to physically attend
closing.” Craig and Rice also argue the trial court erred in concluding that Craig
breached the Contract by not authorizing Charter to release the money to Varon
because “there is no provision in the Contract requiring Craig . . . to authorize the
disbursement of money to Varon.” Craig asserts that “the Contract only required for
[him] to furnish title for the property to Varon at closing,” and he was ready, willing,
and able to furnish title at closing.” Craig also asserts that he “had delivered to
Charter all required documents and instruments necessary to close the sale at
closing.”
          Craig and South Rice, in their original briefing, do not directly challenge many
of the trial court’s findings, including its findings that Craig entered into the Contract
as the seller of the property although South Rice actually held title to the property;
South Rice “was not named in the Contract or referred to in its contents”; Craig “sent
a set of unsigned documents to Charter” on or before the closing date; Craig failed
to appear at the closing; South Rice continued to hold title to the property on the date
of closing; and there was “no written agreement” in which Craig was identified as,
or granted the powers of, a trustee for South Rice on the closing date. We recognize
that Craig disputed at trial, and continues to dispute on appeal, that his mere failure
to appear at the closing constituted a default under the Contract. Craig asserts that
the evidence shows that he made clear to Charter that he was ready, willing, and able
to execute the prepared closing documents. Furthermore, Craig emphasizes LaVern’s
testimony that it was her “understanding” that “South Rice was going to execute” the
closing documents in the event that Varon attended the closing and that “it appeared”
to Lavern that Craig was “ready, willing, and able to sign those documents.”
          However, we cannot view the trial court’s finding in isolation from the other
findings and evidence that Craig’s failure to appear rendered him a defaulting party
under the Contract. The trial court’s finding regarding Craig’s default is not solely
tied to the lack of his physical presence at the closing. Rather, the trial court’s fact
findings and legal conclusions reveal that it entered its judgment in favor of Varon
and Charter based upon evidence showing that the transaction was not ready, or at
least may not have been ready, to close on the closing date. The trial court also found
that Craig’s delivery of unsigned documents to Charter prior to closing was
significant in light of the other evidence showing that, contrary to the Contract, title
to the property was actually held by South Rice and not Craig individually. Some of
the unchallenged findings of fact reveal that the trial court was concerned that there
is no evidence that Craig was a trustee for South Rice, and there is evidence that
certain closing documents required the signature of Craig’s brother, Harry, who did
not testify at trial and who was the other manager of the general partner of South
Rice. Moreover, although LaVern’s testimony might be considered conflicting on
whether the transaction was actually ready to close, she testified that Craig’s brother
never appeared at Charter, she never spoke to him, she could not recall if he had ever
said that he was ready to come to the closing, and that “there were a lot of things that
had to be done” before Charter could issue the title policy and close the Contract. 
The trial court could have found that the evidence presented at trial showed that
Craig, who was the individual seller identified in the Contract, had not taken all steps
necessary to convey clear title to the property on the date of closing. Thus, we
conclude that the trial court was presented with legally and factually sufficient
evidence to support its finding that Craig had defaulted under the Contract.


 
          Craig and South Rice have not challenged the trial court’s finding that the
Contract was ambiguous in the circumstance when both parties were in default. The
trial court determined that both parties defaulted by not closing the transaction by the
closing date and, because the Contract was ambiguous in this circumstance, Craig
was not entitled to exercise the remedy provisions regarding the earnest money. We
agree with the trial court that the Contract is ambiguous regarding the parties’
remedies and the handling of the earnest money when both parties are in default
under the circumstances found by the trial court. Thus, although Craig and Rice may
be correct that there is no express contractual provision requiring Craig “to authorize
the disbursement of money to Varon,” the trial court construed the ambiguous
contractual provisions regarding the right to exercise the contractual remedies and
obtain the earnest money to preclude Craig from obtaining the earnest money in the
event of his own default and then refusing to return it upon demand. We conclude
that the trial court did not err in concluding that Craig’s failure to authorize Charter
to release the money to Varon constituted a breach of the Contract.



          In sum, we hold that the trial court’s findings of fact challenged by Craig and
South Rice are supported by legally and factually sufficient evidence and that the trial
did not err in making its conclusions.


 
Repudiation
          In their second issue, Craig and South Rice argue that the trial court erred in
not finding that Varon repudiated the Contract because the evidence conclusively
shows that Varon’s realtor, Mark Ray, advised LaVern that Varon would not be
attending the closing and LaVern forwarded this notice to Craig’s attorney. 
          Tender of performance is excused under certain circumstances, such as when
a tender would be futile or when the defendants have repudiated the contract.
Chapman v. Olbrich, 217 S.W.3d 482, 491 (Tex. App.—Houston [14th Dist.] 2006,
no pet.) (citing Burford v. Pounders, 145 Tex. 460, 199 S.W.2d 141, 144–45 (1947)). 
“A party repudiates a contract if the party manifests, by words or actions, a definite
and unconditional intention not to perform the contract according to its terms.” Id. 
         Here, the trial court found that both Craig and Varon defaulted by failing to
appear on the closing date and that they both “gave notice of termination of the
Contract” only “after December 10, 2004.” Thus, the trial court necessarily rejected
any argument that Varon repudiated the Contract prior to the closing date. The trial
court’s findings are supported by evidence. First, the trial court could have
considered Craig’s testimony that he was ready on the closing date to proceed with
the closing as conflicting with any subsequent claim made by him that Varon had
repudiated the Contract and that there was no need to tender performance. Second,
the trial court could have considered LaVern’s testimony to indicate that there was,
at a minimum, an open question on the closing date as to whether Varon intended to
close the transaction and, thus, whether he had repudiated the Contract. 
          Accordingly, we hold that Craig and South Rice have not demonstrated that
the evidence conclusively established all vital facts to support a finding of repudiation
and that the trial court’s finding that Varon did not repudiate the Contract is not
against the great weight and preponderance of the evidence.
          We overrule Craig and South Rice’s second issue.
Indemnity Agreement
          In their third issue, Craig and South Rice argue that the judgment in favor of
Charter is “defective because Charter failed to plead any cause of action against
Craig, individually, and only suffered damages of attorney’s fees.” 
          First, Craig and South Rice complain that the trial court’s judgment provides
that Charter may be indemnified for an amount of up to $50,000 from South Rice and
also from Craig individually, when the indemnity agreement is between Charter and
South Rice and the earnest money was indisputably paid to South Rice and not to
Craig. Craig and South Rice also complain that Charter did not plead any causes of
action against Craig individually.
          “When issues not raised by the pleadings are tried by express or implied
consent of the parties, they shall be treated in all respects as if they had been raised
in the pleadings.” Tex. R. Civ. P. 67. At trial, the following exchange occurred:
          [Charter’s counsel]:         And you said that although the indemnity
agreement from [South Rice] that you had
agreed to stand behind that individually, is
that right?
 
          [Craig]:                            Yes.
 
          Craig’s counsel made no objection to the question, and there was no attempt
to clarify or change this testimony in subsequent questioning. Craig clearly and
unequivocally stated in the above exchange that he had in fact agreed to individually
stand behind the indemnity agreement he and his brother Harry had signed on behalf
of South Rice. Craig also provided testimony that “we indemnified” Charter. Thus,
Charter’s claim for indemnity from Craig individually was tried by consent, Craig
admitted that he individually indemnified Charter, and the trial court’s finding
regarding indemnity against Craig is supported by legally and factually sufficient
evidence. See id. 
          Second, Craig and South Rice argue that the trial court’s amended final
judgment is defective because it compels them to pay $50,000 to Varon “and another
$50,000 to Charter,” plus attorney’s fees. Charter counters that when the judgment
is read based upon the trial court’s findings and conclusions, it is clear that Craig and
South Rice are not required to pay the $50,000 twice and that Charter only obtained
a judgment for indemnity from Craig and South Rice. We agree that the judgment
can only be interpreted to provide Charter indemnification for Varon’s damages from
Craig and South Rice in the event Varon recovers any of his damages from Charter.



          Accordingly, we hold that the issue of Craig’s agreement to individually
indemnify Charter was tried by consent, there is sufficient evidence to support the
trial court’s finding that Craig agreed to individually indemnify Charter for its
damages and attorney’s fees, and the trial court’s judgment in favor of Charter is not
defective.
          We overrule Craig and South Rice’s third issue.
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Jennings, Higley, and Sharp.