02-09-316-CV















 
 
 
 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

                                                 NO.
2-09-316-CV

 

 

BELL HELICOPTER TEXTRON INC.                                                  APPELLANT

 

                                                             V.

 

HOUSTON
HELICOPTERS, INC.                                                          APPELLEE

 

 

                                                       ------------

 

              FROM THE 352ND
DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                                      MEMORANDUM OPINION[1]

 

                                                       ------------

I. 
Introduction

Appellant Bell Helicopter Textron
Inc. appeals the trial court=s take-nothing judgment on its
indemnity claim against appellee Houston Helicopters, Inc.  Because the trial court=s findings of fact do not support its
judgment on any legal theory, we will reverse and remand.

II.  Factual
and Procedural Background

On November 27, 1999, a Bell
helicopter owned and operated by Houston Helicopters, Inc. (HHI) crashed.  The crash killed the pilot and the passenger,
who were both HHI employees. 
Subsequently, the families of the deceased employees filed wrongful
death lawsuits against Bell.[2]  Bell settled the lawsuits, paying $1.51
million to the pilot=s family and $1.5 million to the
passenger=s family.  Bell then sued HHI in Tarrant County on
November 2, 2001, seeking indemnity for the defense and settlement costs of the
underlying lawsuits.  Five days later, on
November 7, 2001, HHI sued Bell in Brazoria County.  HHI alleged that Bell was responsible for the
helicopter crash and requested damages for the value of the destroyed
helicopter and for the lost profits resulting from the loss of the helicopter=s use.

HHI=s Brazoria County lawsuit was the first to go to trial.  The jury found that the negligence of HHI,
not Bell, was the proximate cause of the helicopter crash, and the trial court
signed a take-nothing judgment against HHI.

The parties next proceeded to a bench
trial in Tarrant County on Bell=s indemnity claim.  Bell based its indemnity claim on the
Customer Service Facility Agreement between Bell and HHI, which authorized HHI
to operate a service facility for certain Bell aircraft models.  The agreement contained an indemnity clause
in which HHI agreed to indemnify Bell for any loss that Bell incurred as a
result of, or in connection with, the sale, installation, or use of a Acritical and/or flight safety part@ not supplied by Bell.  Evidence at trial demonstrated, and the
parties do not dispute, that the helicopter=s main rotor hub assembly failed when two component parts,
the main rotor grip and the pitch horn, separated in flight.  The trial court found that HHI had not
purchased the main rotor hub assembly from Bell.  HHI employees testified that the main rotor
hub assembly had been created at HHI in 1993 from parts in HHI=s component overhaul and repair
shop.  The trial court found that Bell
had previously overhauled one of those parts, the main rotor grip, in 1992.

The trial court also found that HHI
had installed the other part, the pitch horn, in the main rotor hub assembly
but that HHI had not purchased the pitch horn from Bell.  The evidence demonstrated that Bell had
originally installed the pitch horn on a helicopter sold to the Singapore military
in 1976.  The Singapore government then
sold the helicopter in which the pitch horn was installed to a company in
England named Heliwork, which then sold the helicopter to a New Mexico company
named MSI Helicopters.  Finally, MSI
Helicopters had the pitch horn removed from the helicopter and sold the pitch
horn to HHI.  Bell argued that neither
this pitch horn nor the main rotor hub assembly was a Bell-supplied part and
that, consequently, HHI=s use of the pitch horn and the main
rotor hub assembly triggered HHI=s duty to indemnify under the parties= agreement.

At the close of trial, the trial
court found in favor of HHI and signed a judgment ordering that Bell take
nothing from HHI on its indemnity claim. 
In its findings of fact and conclusions of law, the trial court
expressed two legal bases for its judgment. 
First, it concluded that the indemnity clause was unenforceable because
it did not give fair notice to HHI that HHI was required to indemnify Bell for
Bell=s own negligent acts.  Second, it concluded that Bell=s indemnity claim was a compulsory counterclaim
in HHI=s Brazoria County lawsuit and that
Bell was therefore barred by the doctrine of res judicata from seeking
indemnity from HHI in this case.  Bell
now appeals.

III.  The Indemnity Clause Is Not Subject to Fair
Notice Requirements Because It Does Not Require Indemnity for Bell=s Own Negligence

 

Bell=s first and second issues challenge the trial court=s first conclusion of law, which
declares the indemnity clause in the parties= agreement unenforceable because it does not give fair notice
to HHI that the indemnity clause would indemnify Bell for Bell=s own negligent acts.  The trial court=s conclusions of law are reviewable de novo as questions of
law, and they will be upheld on appeal if the judgment can be sustained on any
legal theory supported by the evidence.  Kaplan
v. Kaplan, 129 S.W.3d 666, 668 (Tex. App.CFort Worth 2004, pet. denied).

Because indemnification of a party
for its own negligence is an extraordinary shifting of risk, the law applies
fair notice requirements to these types of agreements.  Dresser Indus., Inc. v. Page Petroleum,
Inc., 853 S.W.2d 505, 508 (Tex. 1993). 
The fair notice requirements include the express negligence doctrine and
the conspicuousness requirement.  Enserch
Corp. v. Parker, 794 S.W.2d 2, 8 (Tex. 1990).  The express negligence doctrine states that a
party seeking indemnity from the consequences of that party=s own negligence must express that
intent in specific terms within the four corners of the contract.  Ethyl Corp. v. Daniel Constr. Co., 725
S.W.2d 705, 707B08 (Tex. 1987).  The conspicuous requirement mandates that
something must appear on the face of the contract to attract the attention of a
reasonable person when he looks at it.  Dresser,
853 S.W.2d at 508.

Before we review the trial court=s conclusion that the indemnity
clause did not satisfy the fair notice requirements, we must first determine
whether it was subject to themCin other words, whether the parties= agreement purports to indemnify Bell
for Bell=s own negligence.  Bell argues in its first issue that the
agreement does not.  We construe
indemnity agreements under normal rules of contract construction.  See Associated Indem. Corp. v. CAT
Contracting, Inc., 964 S.W.2d 276, 284 (Tex. 1998).  The primary goal is to ascertain and give
effect to the parties= intent as expressed in the
contract.  See Ideal Lease Serv., Inc.
v. Amoco Prod. Co., 662 S.W.2d 951, 953 (Tex. 1983).

The parties= agreement provides,

If
[HHI] uses or sells critical and/or flight safety parts not supplied by BELL,
[HHI] will assume the defense of any lawsuit related to the sale, installation
or use of such parts and agrees to indemnify and hold BELL harmless for any
loss, damage or expense, including but not limited to attorney fees, which BELL
incurs as a result of, or in connection with the sale, installation or use of
the critical and/or flight safety part not supplied by BELL.

 

 








A plain reading of this clause reveals that HHI=s duty to indemnify arises only if
HHI Auses or sells critical and/or flight
safety parts not supplied by BELL.@  Further, HHI=s duty to indemnify is limited to
loss that occurs Aas a result of, or in connection with
the sale, installation or use of the critical and/or flight safety part not
supplied by BELL.@ 
Accordingly, the parties intended the indemnity clause to be triggered
solely by HHI=s actionsCthat is, HHI=s using or selling non-Bell-supplied
partsCand not by any act or omission by
Bell.  Furthermore, the parties intended
HHI to be liable only for loss suffered in connection with HHI=s selling, installing, or using
non-Bell-supplied parts.  Nothing in the
indemnity clause suggests that HHI agreed to indemnify Bell from the
consequences of Bell=s own negligence.  Thus, the fair notice requirements do not
apply.  See Gulf Ins. Co. v. Burns
Motors, Inc., 22 S.W.3d 417, 423 (Tex. 2000) (holding that a contract that
did not contemplate indemnifying the indemnitee from consequences of his own
negligence was not subject to the express negligence doctrine).








HHI argues that Bell is seeking
indemnity for its own negligence in this case because Bell interprets the
agreement to mean that once a Bell part leaves Bell=s plant and enters the stream of
commerce, it is no longer a Bell-supplied part.[3]  HHI asserts that Bell is claiming that it is
entitled to indemnity for anything that happens with every part on a helicopter
as soon as that helicopter leaves Bell. 
This argument interprets the agreement too broadly.  The parties= agreement does not require indemnity for every Bell part
released into the worldwide stream of commerce; instead, it simply requires
indemnity for loss sustained as a result of or in connection with HHI=s sale, installation, or use of a
part that does not come directly from Bell or under Bell=s direct ship authority.  That is, Bell seeks indemnity for loss
related to HHI=s use of an unauthorized partCnot for loss related to Bell=s negligence.

Accordingly, because the parties= agreement does not require HHI to
indemnify Bell for Bell=s own negligence, the fair notice
requirements do not apply.  See Gulf
Ins. Co., 22 S.W.3d at 423; Dresser, 853 S.W.2d at 508; Ethyl,
725 S.W.2d at 707B08. 
The trial court therefore erred by concluding that the indemnity clause
was unenforceable because it failed to comply with the express negligence
doctrine and the conspicuousness requirement. 
See generally Kaplan, 129 S.W.3d at 668 (stating that the trial
court=s conclusions of law are reviewable
de novo as questions of law).  We sustain
Bell=s first issue.[4]

IV.  Bell=s Indemnity Claim Was Not a
Compulsory

Counterclaim to HHI=s Later-Filed Lawsuit

 

The remaining conclusion of law
supporting the trial court=s judgment characterizes Bell=s indemnity claim as a compulsory
counterclaim.  Rule 97(a) defines a
compulsory counterclaim as

any claim within
the jurisdiction of the court, not the subject of a pending action,
which at the time of filing the pleading the pleader has against any opposing
party, if it arises out of the transaction or occurrence that is the subject
matter of the opposing party=s claim and does not require for its adjudication the
presence of third parties of whom the court cannot acquire jurisdiction.

 

Tex. R. Civ. P. 97(a) (emphasis added).  A related principle is the doctrine of res
judicata, which prevents the relitigation of a finally adjudicated claim and
related matters that should have been litigated in a prior suit.  State & County Mut. Fire Ins. Co. v.
Miller, 52 S.W.3d 693, 696 (Tex. 2001); Barr v. Resolution Trust Corp.
ex rel. Sunbelt Fed. Sav., 837 S.W.2d 627, 628B31 (Tex. 1992).

In its fourth issue, Bell argues that
the trial court erred by classifying its indemnity claim as a compulsory
counterclaim in the following conclusion of law:

3.       BELL=s claim against HHI for indemnity was a compulsory
counterclaim under TRCP 97(a) in the Brazoria County lawsuit for the reason
that BELL and HHI were cast as opponents in the Brazoria County lawsuit, and
the subject of the lawsuits in Brazoria County and Tarrant County arise out of
the same transaction or occurrence.  Therefore, BELL is barred by the
doctrine of res judicata from seeking indemnity against HHI in this
case.

 

 








The filemarked copies of the petitions in the record show
that Bell filed its action against HHI in Tarrant County on November 2, 2001,
and that HHI filed its suit against Bell in Brazoria County on November 7,
2001.  Although HHI attempts to
characterize these lawsuits as Acontemporaneously@ filed, HHI does not contend that
these filemarks are incorrect or suggest that the lawsuits were filed on any
other day.  Therefore, there is no
dispute that Bell filed its lawsuit first. 
When HHI filed its lawsuit five days later, Bell=s action was already pending in
Tarrant County.  Accordingly, Bell=s indemnity claim fails to satisfy
rule 97(a)=s requirement that a compulsory
counterclaim must not be Athe subject of a pending action.@ 
Its indemnity claim could not have been a compulsory counterclaim to HHI=s later-filed suit because at the
time that HHI filed its suit, Bell=s indemnity claim was already the subject of another pending
action.  See Commint Tech. Servs.,
Inc. v. Quickel, 314 S.W.3d 646, 652 (Tex. App.CHouston [14th Dist.] 2010, no pet.)
(barring a second-filed lawsuit under the compulsory counterclaim rule even
though the original defendant had not yet filed an answer or any other pleading
in the first lawsuit).

Furthermore, it is well settled that
when suit would be proper in more than one county, the court in which suit is
first filed acquires dominant jurisdiction to the exclusion of other
courts.  Wyatt v. Shaw Plumbing Co.,
760 S.W.2d 245, 248 (Tex. 1988).  As long
as the forum is a proper one, it is the plaintiff=s privilege to choose the forum.  Id. 
Defendants are simply not at liberty to decline to do battle in the
forum chosen by the plaintiff.  Id.[5]  But if Bell=s indemnity claim were a compulsory counterclaim to HHI=s later-filed suit,  then to avoid the bar of res judicata, Bell
would have had to take a nonsuit in its first-filed action in its chosen forum
and refile its indemnity claim as a counterclaim to HHI=s suit.  This result is incongruous with the Asimple fairness@ that the first-filed rule promotes
by automatically and impartially conferring dominant jurisdiction on the party
who files first.  See Perry v. Del Rio,
66 S.W.3d 239, 252 (Tex. 2001) (stating that considerations of fairness require
that Ain a race to the courthouse, the
winner=s suit should have dominant
jurisdiction@).[6]

HHI asserts that the trial court
should have the discretion to use res judicata to prevent Apiecemeal@ litigation, and we recognize that A[i]t has long been the policy of the
courts and the legislature of this state to avoid a multiplicity of lawsuits.@ 
Wyatt, 760 S.W.2d at 246. 
But a trial court has no discretion to ignore the law in an attempt to
accomplish this goal.  See In re Am.
Homestar of Lancaster, Inc., 50 S.W.3d 480, 483 (Tex. 2001) (orig.
proceeding) (stating that a trial court has no discretion to determine what the
law is or in applying the law to the facts). 
Accordingly, we hold that the trial court erred by concluding as a
matter of law that Bell=s indemnity claim was a compulsory
counterclaim in HHI=s later-filed Brazoria County lawsuit
and that res judicata barred Bell from seeking indemnity in this case.  See AMX Enters., L.L.P. v. Master Realty
Corp., 283 S.W.3d 506, 519 (Tex. App.CFort Worth 2009, no pet.) (op. on reh=g) (stating that conclusions of law
may be reviewed to determine their correctness based upon the facts); Kaplan,
129 S.W.3d at 668.  We sustain Bell=s fourth issue.

V.  The Trial Court=s Judgment Cannot Be Upheld

on Any Other Legal Theory

 

 








Although we have held that both
conclusions of law on which the trial court based its judgment are incorrect,
we do not reverse a judgment for incorrect conclusions of law if the
controlling findings of fact support the judgment under a correct legal theory.[7]  See Alan Reuber Chevrolet, Inc. v. Grady
Chevrolet, Ltd., 287 S.W.3d 877, 883 (Tex. App.CDallas 2009, no pet.).  HHI raises several other theories in defense
of the judgment, but it does not explain how the trial court=s findings of fact support the
judgment under any of its additional theories. 
Most of HHI=s additional theories apply to its
overall assertion that HHI did not breach the indemnity agreement.[8]  HHI also argues that the labor code bars Bell=s Athird-party@ recovery arising from the deaths of
HHI=s employees because HHI did not agree
to assume liability for Bell=s settlements with the decedents= families.[9]  The trial court made no findings on these
theories, however, and we may not presume findings to support the judgment on a
ground of recovery or defense when the trial court does not include any element
of that ground in its findings of fact.  See
Tex. R. Civ. P. 299.

Turning to HHI=s theory that it did not breach the
indemnity agreement, we observe that the trial court made no findings of fact
relating to the agreement=s time frame or applicability to HHI=s use of parts on its own
helicopters.  But the trial court did
make the following findings of fact regarding HHI=s actions in connection with the parts used on the helicopter
involved in the crash:

7.       HHI installed the pitch horn on the main
rotor hub assembly of the helicopter.

8.       HHI did not purchase the pitch horn or
the main rotor hub assembly from BELL, however, the pitch horn and main rotor
hub assembly were manufactured by BELL.

9.       In 1992, BELL overhauled the main rotor
grip of the main rotor assembly which was installed on the helicopter at the
time of the crash.

 

 








None of these findings, however, support a conclusion that
HHI did not Ause or sell critical and/or flight
safety parts not supplied by BELL.@  The trial court=s findings that the pitch horn and
the main rotor hub assembly were manufactured by Bell and that Bell overhauled
the grip in 1992 are not equivalent to findings that the pitch horn and the
main rotor hub assembly were Bell-supplied parts as defined by the parties= agreement.  Accordingly, the findings cannot support the
judgment under the theory that HHI did not breach the indemnity agreement.[10]

Because we have sustained Bell=s first and fourth issues by
determining that both conclusions of law on which the trial court based its
judgment are incorrect, and because none of the trial court=s findings of fact support its
judgment under a correct legal theory, we must reverse the trial court=s judgment.  See Alan Reuber Chevrolet, 287 S.W.3d
at 883.  Bell urges us to render a
judgment in its favor finding that HHI breached the indemnity agreement and
awarding attorney=s fees, expenses, and settlements
incurred in the wrongful death lawsuits as well as attorney=s fees and expenses incurred in its indemnity
lawsuit against HHI.  But the trial court
made no findings on the issue of breach, and a court of appeals cannot make
original findings of fact.  Tex. Nat=l Bank v. Karnes, 717 S.W.2d 901, 903 (Tex.
1986);  Inimitable Group, L.P. v.
Westwood Group Dev. II, Ltd., 264 S.W.3d 892, 898 (Tex. App.CFort Worth 2008, no pet.).  Therefore, because we cannot render a
judgment that is unsupported by any factual findings, we must reverse and
remand.[11]  See Tex. R. App. P. 43.2(d); Nipp
v. Broumley, 285 S.W.3d 552, 560 (Tex. App.CWaco 2009, no pet.) (refusing to render judgment awarding
attorney=s fees in the absence of any findings
on the issue).

VI.  Conclusion

Having sustained Bell=s first and fourth issues, we need
not address its second and third issues because they are not necessary to
disposition of the appeal.  See
Tex. R. App. P. 47.1.  We reverse the
trial court=s judgment and remand the case to the
trial court for further proceedings.

 

 

SUE
WALKER

JUSTICE

 

 

PANEL:  DAUPHINOT, WALKER, and MEIER, JJ.

 

DAUPHINOT, J. filed
a dissenting opinion.

 

DELIVERED:  October 7, 2010

 

 



 

 

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-09-316-CV

 

 

BELL
HELICOPTER TEXTRON INC.                                                  APPELLANT

 

                                                             V.

 

HOUSTON HELICOPTERS, INC.                                                          APPELLEE

 

                                                       ------------

 

              FROM THE 352ND
DISTRICT COURT OF TARRANT COUNTY

 

                                                       ------------

 

                         DISSENTING MEMORANDUM OPINION[1]

 

                                                       ------------

The majority holds that the trial
court=s judgment cannot be affirmed on any
legal theory.  I respectfully
disagree.  The customer service facility
agreement=s plain language, when taken as a
whole, shows that it was intended to apply only to HHI=s actions as a customer service
facility, that is, to HHI=s service of aircraft for third
parties (customers) and not to HHI=s own aircraft.  The
purpose of the agreement is to set up the conditions and requirements for HHI
to have Bell=s permission to hold itself out to
the public as and receive the benefits of being a Bell-sanctioned repair
facility.

Even the part of the agreement in
which the indemnity clause appears points to the agreement pertaining to acts
by HHI toward third party customers.  The
clause is immediately preceded by a paragraph in which Bell states that Acustomers may reasonably expect that
parts sold by the CUSTOMER SERVICE FACILITY are parts supplied by BELL.@ 
This customer expectation would obviously have no application to HHI,
the entity making the decision about which parts to use.  The rest of the paragraph contains a
requirement that HHI not represent that a non-Bell part is a genuine Bell part
or is equivalent to a genuine Bell part. 
The very next paragraph is the indemnity provision.  Nothing in the agreement suggests that it was
intended to apply to HHI when HHI was not holding itself out to be and acting
as a Bell-approved customer service facility to third parties. 

In Bell=s reply brief, it points out evidence that HHI bought Bell
parts using the discounted rate it received by virtue of the customer service
facility agreement and then used those parts in aircraft that it used for its
air taxi operation.  Bell argues, with no
citation to authority, that this evidence shows that the air taxi service was a
Bell customer.  This evidence does not
alter the apparent intention of the agreement to govern HHI=s actions as a Bell-approved repair
facility to third party customers relying on its Bell-approved
designation.  Because the agreement has
no application for work that HHI does on its own aircraft, and because the
helicopter that is the basis of this suit was HHI=s own aircraft, I respectfully dissent.

 

LEE
ANN DAUPHINOT

JUSTICE

 

DELIVERED: October 7, 2010











[1]See Tex. R.
App. P. 47.4.





[2]The families did not name HHI as a defendant in either
lawsuit.





[3]The agreement defines ABell Supplied Parts@ as A(1) parts supplied directly by BELL for the >Listed
Products= made under BELL=s FAA Production Certificate, or (2) supplied under
the written direct ship authority of BELL.@





[4]Having sustained Bell=s first issue, we need not reach its second issue, in
which it argues that the trial court=s fair-notice conclusion of law was incorrect for the
additional reason that the Brazoria County jury had already found that Bell was
not negligent.  See Tex. R. App.
P. 47.1.





[5]A plaintiff who desires abatement of the later-filed
lawsuit due to the pendency of a prior suit must raise the issue in a timely
manner, however, or it is waived.  Wyatt,
760 S.W.2d at 248.  Bell does not assert
that it filed a timely plea in abatement in HHI=s Brazoria County lawsuit.  And although HHI now argues that Bell=s claim
should have been litigated in the Brazoria County lawsuit, it does not assert
that it ever attempted to have the case transferred or in any way called the
Brazoria County court=s attention to Bell=s indemnity claim already pending in Tarrant County.





[6]There are three exceptions to the first-filed
rule:  (1) conduct by a party that estops
it from asserting prior active jurisdiction, (2) lack of persons to be joined
if feasible, or the power to bring them before the court, and (3) lack of
intent to prosecute the first lawsuit.  Wyatt,
760 S.W.2d at 248.  HHI does not argue
that any of these exceptions applies to this case.





[7]The dissent would affirm the trial court=s
judgment on a theory contrary to the evidence presented at trial and not
supported by any findings of factCthat HHI was not a third-party customer under the
terms of the Customer Service Facility Agreement when it serviced the
helicopter in question that it owned. 
But both Philip Dieterich and Albert Tatyrek, HHI=s
director of maintenance, testified that HHI=s air taxi operation was a customer of HHI=s
service facility under the terms of the Customer Service Facility
Agreement.  In fact, HHI requested, and
the trial court refused to make, a finding that A33.  HHI was not
a >Customer= under the CSF Agreement BELL relies upon.@  Consequently, this rejected finding cannot be
presumed by this court as the dissent does. 
See, e.g., Davey v. Shaw, 225 S.W.3d 843, 857 (Tex. App.CDallas
2007, no pet.) (explaining that rule 299 allows presumed findings only on unrequested
and omitted findings).





[8]HHI argues that the indemnity clause did not apply to
HHI=s use of parts on its own helicopters; that HHI did
not use or install a non-Bell-supplied part; that Bell=s settlements
did not relate to HHI=s use of a non-Bell-supplied part; and that the
agreement, signed in 1998, does not apply to a part installed in 1993.





[9]The Texas Labor Code states,

 

In an action for damages brought by an injured
employee, a legal beneficiary, or an insurance carrier against a third party
liable to pay damages for the injury or death under this chapter that results
in a judgment against the third party or a settlement by the third party, the
employer is not liable to the third party for reimbursement or damages based on
the judgment or settlement unless the employer executed, before the injury or
death occurred, a written agreement with the third party to assume the
liability.

 

Tex. Lab. Code Ann. ' 417.004
(Vernon 2006).





[10]We also note that HHI requested several findings from
the trial court supporting its theory that it did not breach the agreement,
including the following:

 

22.  The relevant CSF Agreement has no bearing
upon HHI=s actions which occurred prior to 1 January 1998.

 

. . . . 

 

31.  The CSF Agreement BELL relies upon has no
bearing upon HHI=s use or installation of non-BELL supplied parts on
its own helicopters.

 

. . . . 

 

65.  BELL did not prove that HHI used or installed
any non-BELL Supplied Part.

 

66.  BELL did not prove that HHI=s use,
or installation of any Non-BELL Supplied Part resulted in loss or damage to
BELL.

 

Despite these requests, the
trial court did not make any of these findings. 
Rule 299 does not permit a fact finding to be presumed when that finding
was requested and refused by the trial judge. 
Davey, 225 S.W.3d at 857. 
Accordingly, we do not presume other findings as to HHI=s
installation or use of parts on the helicopter that would lead to a conclusion
that HHI did not breach the indemnity agreement.  See Tex. R. Civ. P. 299; Davey,
225 S.W.3d at 857.





[11]In its third issue, Bell asserts that the trial court=s
finding that Bell manufactured the main rotor hub assembly was against the
great weight and preponderance of the evidence. 
A court of appeals can Aunfind@ facts.  Tex.
Nat=l Bank, 717
S.W.2d at 903; Inimitable Group, 264 S.W.3d at 898.  But even if we Aunfound@ the trial court=s finding, there still would be no findings of fact
remaining that would support a judgment in Bell=s favor or give Bell any greater relief.  Accordingly, we need not reach this
issue.  See Tex. R. App. P. 47.1.





[1]See Tex. R.
App. P. 47.4.