

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-09-316-CV

BELL HELICOPTER TEXTRON INC.                                    APPELLANT

V.

HOUSTON HELICOPTERS, INC.                                        APPELLEE

------------

### FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Bell Helicopter Textron Inc. appeals the trial court's take-nothing judgment on its indemnity claim against appellee Houston Helicopters, Inc. Because the trial court's findings of fact do not support its judgment on any legal theory, we will reverse and remand.

---

[1] ... *See* Tex. R. App. P. 47.4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On November 27, 1999, a Bell helicopter owned and operated by Houston Helicopters, Inc. (HHI) crashed. The crash killed the pilot and the passenger, who were both HHI employees. Subsequently, the families of the deceased employees filed wrongful death lawsuits against Bell.[2] Bell settled the lawsuits, paying $1.51 million to the pilot's family and $1.5 million to the passenger's family. Bell then sued HHI in Tarrant County on November 2, 2001, seeking indemnity for the defense and settlement costs of the underlying lawsuits. Five days later, on November 7, 2001, HHI sued Bell in Brazoria County. HHI alleged that Bell was responsible for the helicopter crash and requested damages for the value of the destroyed helicopter and for the lost profits resulting from the loss of the helicopter's use.

HHI's Brazoria County lawsuit was the first to go to trial. The jury found that the negligence of HHI, not Bell, was the proximate cause of the helicopter crash, and the trial court signed a take-nothing judgment against HHI.

The parties next proceeded to a bench trial in Tarrant County on Bell's indemnity claim. Bell based its indemnity claim on the Customer Service Facility Agreement between Bell and HHI, which authorized HHI to operate a service facility for certain Bell aircraft models. The agreement contained an indemnity clause in which HHI agreed to indemnify Bell for any loss that Bell incurred as a result of, or in connection with, the sale, installation, or use of a "critical and/or flight safety part"

_____

[2] ... The families did not name HHI as a defendant in either lawsuit.

2

not supplied by Bell. Evidence at trial demonstrated, and the parties do not dispute, that the helicopter's main rotor hub assembly failed when two component parts, the main rotor grip and the pitch horn, separated in flight. The trial court found that HHI had not purchased the main rotor hub assembly from Bell. HHI employees testified that the main rotor hub assembly had been created at HHI in 1993 from parts in HHI's component overhaul and repair shop. The trial court found that Bell had previously overhauled one of those parts, the main rotor grip, in 1992.

The trial court also found that HHI had installed the other part, the pitch horn, in the main rotor hub assembly but that HHI had not purchased the pitch horn from Bell. The evidence demonstrated that Bell had originally installed the pitch horn on a helicopter sold to the Singapore military in 1976. The Singapore government then sold the helicopter in which the pitch horn was installed to a company in England named Heliwork, which then sold the helicopter to a New Mexico company named MSI Helicopters. Finally, MSI Helicopters had the pitch horn removed from the helicopter and sold the pitch horn to HHI. Bell argued that neither this pitch horn nor the main rotor hub assembly was a Bell-supplied part and that, consequently, HHI's use of the pitch horn and the main rotor hub assembly triggered HHI's duty to indemnify under the parties' agreement.

At the close of trial, the trial court found in favor of HHI and signed a judgment ordering that Bell take nothing from HHI on its indemnity claim. In its findings of fact and conclusions of law, the trial court expressed two legal bases for its judgment.

3

First, it concluded that the indemnity clause was unenforceable because it did not give fair notice to HHI that HHI was required to indemnify Bell for Bell's own negligent acts. Second, it concluded that Bell's indemnity claim was a compulsory counterclaim in HHI's Brazoria County lawsuit and that Bell was therefore barred by the doctrine of res judicata from seeking indemnity from HHI in this case. Bell now appeals.

### III. THE INDEMNITY CLAUSE IS NOT SUBJECT TO FAIR NOTICE REQUIREMENTS BECAUSE IT DOES NOT REQUIRE INDEMNITY FOR BELL'S OWN NEGLIGENCE

Bell's first and second issues challenge the trial court's first conclusion of law, which declares the indemnity clause in the parties' agreement unenforceable because it does not give fair notice to HHI that the indemnity clause would indemnify Bell for Bell's own negligent acts. The trial court's conclusions of law are reviewable de novo as questions of law, and they will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Kaplan v. Kaplan*, 129 S.W.3d 666, 668 (Tex. App.—Fort Worth 2004, pet. denied).

Because indemnification of a party for its own negligence is an extraordinary shifting of risk, the law applies fair notice requirements to these types of agreements. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). The fair notice requirements include the express negligence doctrine and the conspicuousness requirement. *Enserch Corp. v. Parker*, 794 S.W.2d 2, 8 (Tex. 1990). The express negligence doctrine states that a party seeking indemnity from

4

the consequences of that party's own negligence must express that intent in specific terms within the four corners of the contract. *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707–08 (Tex. 1987). The conspicuous requirement mandates that something must appear on the face of the contract to attract the attention of a reasonable person when he looks at it. *Dresser*, 853 S.W.2d at 508.

Before we review the trial court's conclusion that the indemnity clause did not satisfy the fair notice requirements, we must first determine whether it was subject to them—in other words, whether the parties' agreement purports to indemnify Bell for Bell's own negligence. Bell argues in its first issue that the agreement does not. We construe indemnity agreements under normal rules of contract construction. *See Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 284 (Tex. 1998). The primary goal is to ascertain and give effect to the parties' intent as expressed in the contract. *See Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983).

The parties' agreement provides,

> If [HHI] uses or sells critical and/or flight safety parts not supplied by BELL, [HHI] will assume the defense of any lawsuit related to the sale, installation or use of such parts and agrees to indemnify and hold BELL harmless for any loss, damage or expense, including but not limited to attorney fees, which BELL incurs as a result of, or in connection with the sale, installation or use of the critical and/or flight safety part not supplied by BELL.

A plain reading of this clause reveals that HHI's duty to indemnify arises only if HHI "uses or sells critical and/or flight safety parts not supplied by BELL." Further, HHI's

5

duty to indemnify is limited to loss that occurs "as a result of, or in connection with the sale, installation or use of the critical and/or flight safety part not supplied by BELL." Accordingly, the parties intended the indemnity clause to be triggered solely by HHI's actions—that is, HHI's using or selling non-Bell-supplied parts—and not by any act or omission by Bell. Furthermore, the parties intended HHI to be liable only for loss suffered in connection with HHI's selling, installing, or using non-Bell-supplied parts. Nothing in the indemnity clause suggests that HHI agreed to indemnify Bell from the consequences of Bell's own negligence. Thus, the fair notice requirements do not apply. *See Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000) (holding that a contract that did not contemplate indemnifying the indemnitee from consequences of his own negligence was not subject to the express negligence doctrine).

HHI argues that Bell is seeking indemnity for its own negligence in this case because Bell interprets the agreement to mean that once a Bell part leaves Bell's plant and enters the stream of commerce, it is no longer a Bell-supplied part.[3] HHI asserts that Bell is claiming that it is entitled to indemnity for anything that happens with every part on a helicopter as soon as that helicopter leaves Bell. This argument interprets the agreement too broadly. The parties' agreement does not require indemnity for every Bell part released into the worldwide stream of commerce;

[3] The agreement defines "Bell Supplied Parts" as "(1) parts supplied directly by BELL for the 'Listed Products' made under BELL's FAA Production Certificate, or (2) supplied under the written direct ship authority of BELL."

6

instead, it simply requires indemnity for loss sustained as a result of or in connection with HHI's sale, installation, or use of a part that does not come directly from Bell or under Bell's direct ship authority. That is, Bell seeks indemnity for loss related to HHI's use of an unauthorized part—not for loss related to Bell's negligence.

Accordingly, because the parties' agreement does not require HHI to indemnify Bell for Bell's own negligence, the fair notice requirements do not apply. *See Gulf Ins. Co.*, 22 S.W.3d at 423; *Dresser*, 853 S.W.2d at 508; *Ethyl*, 725 S.W.2d at 707–08. The trial court therefore erred by concluding that the indemnity clause was unenforceable because it failed to comply with the express negligence doctrine and the conspicuousness requirement. *See generally Kaplan*, 129 S.W.3d at 668 (stating that the trial court's conclusions of law are reviewable de novo as questions of law). We sustain Bell's first issue.[4]

## IV. BELL'S INDEMNITY CLAIM WAS NOT A COMPULSORY COUNTERCLAIM TO HHI'S LATER-FILED LAWSUIT

The remaining conclusion of law supporting the trial court's judgment characterizes Bell's indemnity claim as a compulsory counterclaim. Rule 97(a) defines a compulsory counterclaim as

> any claim within the jurisdiction of the court, *not the subject of a pending action*, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or

---

[4] ... Having sustained Bell's first issue, we need not reach its second issue, in which it argues that the trial court's fair-notice conclusion of law was incorrect for the additional reason that the Brazoria County jury had already found that Bell was not negligent. *See* Tex. R. App. P. 47.1.

7

occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Tex. R. Civ. P. 97(a) (emphasis added). A related principle is the doctrine of res judicata, which prevents the relitigation of a finally adjudicated claim and related matters that should have been litigated in a prior suit. *State & County Mut. Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex. 2001); *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628–31 (Tex. 1992).

In its fourth issue, Bell argues that the trial court erred by classifying its indemnity claim as a compulsory counterclaim in the following conclusion of law:

> 3. BELL's claim against HHI for indemnity was a compulsory counterclaim under TRCP 97(a) in the Brazoria County lawsuit for the reason that BELL and HHI were cast as opponents in the Brazoria County lawsuit, and the subject of the lawsuits in Brazoria County and Tarrant County arise out of the same transaction or occurrence. Therefore, BELL is barred by the doctrine of *res judicata* from seeking indemnity against HHI in this case.

The filemarked copies of the petitions in the record show that Bell filed its action against HHI in Tarrant County on November 2, 2001, and that HHI filed its suit against Bell in Brazoria County on November 7, 2001. Although HHI attempts to characterize these lawsuits as "contemporaneously" filed, HHI does not contend that these filemarks are incorrect or suggest that the lawsuits were filed on any other day. Therefore, there is no dispute that Bell filed its lawsuit first. When HHI filed its lawsuit five days later, Bell's action was already pending in Tarrant County. Accordingly, Bell's indemnity claim fails to satisfy rule 97(a)'s requirement that a

8

compulsory counterclaim must not be "the subject of a pending action." Its indemnity claim could not have been a compulsory counterclaim to HHI's later-filed suit because at the time that HHI filed its suit, Bell's indemnity claim was already the subject of another pending action. *See Commint Tech. Servs., Inc. v. Quickel*, 314 S.W.3d 646, 652 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (barring a second-filed lawsuit under the compulsory counterclaim rule even though the original defendant had not yet filed an answer or any other pleading in the first lawsuit).

Furthermore, it is well settled that when suit would be proper in more than one county, the court in which suit is first filed acquires dominant jurisdiction to the exclusion of other courts. *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988). As long as the forum is a proper one, it is the plaintiff's privilege to choose the forum. *Id.* Defendants are simply not at liberty to decline to do battle in the forum chosen by the plaintiff. *Id.*[5] But if Bell's indemnity claim were a compulsory counterclaim to HHI's later-filed suit, then to avoid the bar of res judicata, Bell would have had to take a nonsuit in its first-filed action in its chosen forum and refile its indemnity claim as a counterclaim to HHI's suit. This result is incongruous with the

---

[5] ... A plaintiff who desires abatement of the later-filed lawsuit due to the pendency of a prior suit must raise the issue in a timely manner, however, or it is waived. *Wyatt*, 760 S.W.2d at 248. Bell does not assert that it filed a timely plea in abatement in HHI's Brazoria County lawsuit. And although HHI now argues that Bell's claim should have been litigated in the Brazoria County lawsuit, it does not assert that it ever attempted to have the case transferred or in any way called the Brazoria County court's attention to Bell's indemnity claim already pending in Tarrant County.

9

"simple fairness" that the first-filed rule promotes by automatically and impartially conferring dominant jurisdiction on the party who files first. *See Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001) (stating that considerations of fairness require that "in a race to the courthouse, the winner's suit should have dominant jurisdiction").[6]

HHI asserts that the trial court should have the discretion to use res judicata to prevent "piecemeal" litigation, and we recognize that "[i]t has long been the policy of the courts and the legislature of this state to avoid a multiplicity of lawsuits." *Wyatt*, 760 S.W.2d at 246. But a trial court has no discretion to ignore the law in an attempt to accomplish this goal. *See In re Am. Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 483 (Tex. 2001) (orig. proceeding) (stating that a trial court has no discretion to determine what the law is or in applying the law to the facts). Accordingly, we hold that the trial court erred by concluding as a matter of law that Bell's indemnity claim was a compulsory counterclaim in HHI's later-filed Brazoria County lawsuit and that res judicata barred Bell from seeking indemnity in this case. *See AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 519 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g) (stating that conclusions of law may be reviewed to determine their correctness based upon the facts); *Kaplan*, 129 S.W.3d at 668. We sustain Bell's fourth issue.

_____

[6] ... There are three exceptions to the first-filed rule: (1) conduct by a party that estops it from asserting prior active jurisdiction, (2) lack of persons to be joined if feasible, or the power to bring them before the court, and (3) lack of intent to prosecute the first lawsuit. *Wyatt*, 760 S.W.2d at 248. HHI does not argue that any of these exceptions applies to this case.

## V. THE TRIAL COURT'S JUDGMENT CANNOT BE UPHELD ON ANY OTHER LEGAL THEORY

Although we have held that both conclusions of law on which the trial court based its judgment are incorrect, we do not reverse a judgment for incorrect conclusions of law if the controlling findings of fact support the judgment under a correct legal theory.[7]  *See Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 883 (Tex. App.—Dallas 2009, no pet.).  HHI raises several other theories in defense of the judgment, but it does not explain how the trial court's findings of fact support the judgment under any of its additional theories.  Most of HHI's additional theories apply to its overall assertion that HHI did not breach the indemnity agreement.[8]  HHI also argues that the labor code bars Bell's "third-party" recovery arising from the deaths of HHI's employees because HHI did not agree to

---

[7]... The dissent would affirm the trial court's judgment on a theory contrary to the evidence presented at trial and not supported by any findings of fact—that HHI was not a third-party customer under the terms of the Customer Service Facility Agreement when it serviced the helicopter in question that it owned.  But both Philip Dieterich and Albert Tatyrek, HHI's director of maintenance, testified that HHI's air taxi operation was a customer of HHI's service facility under the terms of the Customer Service Facility Agreement.  In fact, HHI requested, and the trial court refused to make, a finding that "33.  HHI was not a 'Customer' under the CSF Agreement BELL relies upon."  Consequently, this rejected finding cannot be presumed by this court as the dissent does. *See, e.g., Davey v. Shaw*, 225 S.W.3d 843, 857 (Tex. App.—Dallas 2007, no pet.) (explaining that rule 299 allows presumed findings only on *unrequested* and omitted findings).

[8]... HHI argues that the indemnity clause did not apply to HHI's use of parts on its own helicopters; that HHI did not use or install a non-Bell-supplied part; that Bell's settlements did not relate to HHI's use of a non-Bell-supplied part; and that the agreement, signed in 1998, does not apply to a part installed in 1993.

assume liability for Bell's settlements with the decedents' families.[9] The trial court made no findings on these theories, however, and we may not presume findings to support the judgment on a ground of recovery or defense when the trial court does not include any element of that ground in its findings of fact. *See* Tex. R. Civ. P. 299.

Turning to HHI's theory that it did not breach the indemnity agreement, we observe that the trial court made no findings of fact relating to the agreement's time frame or applicability to HHI's use of parts on its own helicopters. But the trial court did make the following findings of fact regarding HHI's actions in connection with the parts used on the helicopter involved in the crash:

> 7. HHI installed the pitch horn on the main rotor hub assembly of the helicopter.
> 8. HHI did not purchase the pitch horn or the main rotor hub assembly from BELL, however, the pitch horn and main rotor hub assembly were manufactured by BELL.
> 9. In 1992, BELL overhauled the main rotor grip of the main rotor assembly which was installed on the helicopter at the time of the crash.

---

[9] ... The Texas Labor Code states,

> In an action for damages brought by an injured employee, a legal beneficiary, or an insurance carrier against a third party liable to pay damages for the injury or death under this chapter that results in a judgment against the third party or a settlement by the third party, the employer is not liable to the third party for reimbursement or damages based on the judgment or settlement unless the employer executed, before the injury or death occurred, a written agreement with the third party to assume the liability.

Tex. Lab. Code Ann. § 417.004 (Vernon 2006).

None of these findings, however, support a conclusion that HHI did not "use or sell critical and/or flight safety parts not supplied by BELL." The trial court's findings that the pitch horn and the main rotor hub assembly were manufactured by Bell and that Bell overhauled the grip in 1992 are not equivalent to findings that the pitch horn and the main rotor hub assembly were Bell-supplied parts as defined by the parties' agreement. Accordingly, the findings cannot support the judgment under the theory that HHI did not breach the indemnity agreement.[10]

---

[10] ... We also note that HHI requested several findings from the trial court supporting its theory that it did not breach the agreement, including the following:

> 22. The relevant CSF Agreement has no bearing upon HHI's actions which occurred prior to 1 January 1998.
>
> . . . .
>
> 31. The CSF Agreement BELL relies upon has no bearing upon HHI's use or installation of non-BELL supplied parts on its own helicopters.
>
> . . . .
>
> 65. BELL did not prove that HHI used or installed any non-BELL Supplied Part.
>
> 66. BELL did not prove that HHI's use, or installation of any Non-BELL Supplied Part resulted in loss or damage to BELL.

Despite these requests, the trial court did not make any of these findings. Rule 299 does not permit a fact finding to be presumed when that finding was requested and refused by the trial judge. *Davey,* 225 S.W.3d at 857. Accordingly, we do not presume other findings as to HHI's installation or use of parts on the helicopter that would lead to a conclusion that HHI did not breach the indemnity agreement. *See* Tex. R. Civ. P. 299; *Davey*, 225 S.W.3d at 857.

13

Because we have sustained Bell's first and fourth issues by determining that both conclusions of law on which the trial court based its judgment are incorrect, and because none of the trial court's findings of fact support its judgment under a correct legal theory, we must reverse the trial court's judgment. *See Alan Reuber Chevrolet*, 287 S.W.3d at 883. Bell urges us to render a judgment in its favor finding that HHI breached the indemnity agreement and awarding attorney's fees, expenses, and settlements incurred in the wrongful death lawsuits as well as attorney's fees and expenses incurred in its indemnity lawsuit against HHI. But the trial court made no findings on the issue of breach, and a court of appeals cannot make original findings of fact. *Tex. Nat'l Bank v. Karnes,* 717 S.W.2d 901, 903 (Tex. 1986); *Inimitable Group, L.P. v. Westwood Group Dev. II, Ltd.*, 264 S.W.3d 892, 898 (Tex. App.—Fort Worth 2008, no pet.). Therefore, because we cannot render a judgment that is unsupported by any factual findings, we must reverse and remand.[11] *See* Tex. R. App. P. 43.2(d); *Nipp v. Broumley*, 285 S.W.3d 552, 560 (Tex. App.—Waco 2009, no pet.) (refusing to render judgment awarding attorney's fees in the absence of any findings on the issue).

---

[11] In its third issue, Bell asserts that the trial court's finding that Bell manufactured the main rotor hub assembly was against the great weight and preponderance of the evidence. A court of appeals can "unfind" facts. *Tex. Nat'l Bank,* 717 S.W.2d at 903; *Inimitable Group*, 264 S.W.3d at 898. But even if we "unfound" the trial court's finding, there still would be no findings of fact remaining that would support a judgment in Bell's favor or give Bell any greater relief. Accordingly, we need not reach this issue. *See* Tex. R. App. P. 47.1.

14

## VI. CONCLUSION

Having sustained Bell's first and fourth issues, we need not address its second and third issues because they are not necessary to disposition of the appeal. *See* Tex. R. App. P. 47.1. We reverse the trial court's judgment and remand the case to the trial court for further proceedings.

SUE WALKER
JUSTICE

PANEL: DAUPHINOT, WALKER, and MEIER, JJ.

DAUPHINOT, J. filed a dissenting opinion.

DELIVERED: October 7, 2010



## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-09-316-CV**

BELL HELICOPTER TEXTRON INC.                                    APPELLANT

V.

HOUSTON HELICOPTERS, INC.                                       APPELLEE

------------

FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

------------

## DISSENTING MEMORANDUM OPINION[1]

------------

The majority holds that the trial court's judgment cannot be affirmed on any legal theory. I respectfully disagree. The customer service facility agreement's plain language, when taken as a whole, shows that it was intended to apply only to HHI's actions as a customer service facility, that is, to HHI's service of aircraft for third parties (customers) and not to HHI's own aircraft. The purpose of the agreement is to set up the conditions and requirements for HHI to have Bell's permission to hold

---

[1] *See* Tex. R. App. P. 47.4.

itself out to the public as and receive the benefits of being a Bell-sanctioned repair facility.

Even the part of the agreement in which the indemnity clause appears points to the agreement pertaining to acts by HHI toward third party customers. The clause is immediately preceded by a paragraph in which Bell states that "customers may reasonably expect that parts sold by the CUSTOMER SERVICE FACILITY are parts supplied by BELL." This customer expectation would obviously have no application to HHI, the entity making the decision about which parts to use. The rest of the paragraph contains a requirement that HHI not represent that a non-Bell part is a genuine Bell part or is equivalent to a genuine Bell part. The very next paragraph is the indemnity provision. Nothing in the agreement suggests that it was intended to apply to HHI when HHI was not holding itself out to be and acting as a Bell-approved customer service facility to third parties.

In Bell's reply brief, it points out evidence that HHI bought Bell parts using the discounted rate it received by virtue of the customer service facility agreement and then used those parts in aircraft that it used for its air taxi operation. Bell argues, with no citation to authority, that this evidence shows that the air taxi service was a Bell customer. This evidence does not alter the apparent intention of the agreement to govern HHI's actions as a Bell-approved repair facility to third party customers relying on its Bell-approved designation. Because the agreement has no application

for work that HHI does on its own aircraft, and because the helicopter that is the basis of this suit was HHI's own aircraft, I respectfully dissent.

LEE ANN DAUPHINOT
JUSTICE

DELIVERED: October 7, 2010